## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES BIEAR,                              :
                                         :
          **Plaintiff**           :
                                         :
   **v.**                                 :     **3:14-CV-1488**
                                         :     **(JUDGE MARIANI)**
**UNITED STATES DEPARTMENT**              :
**OF JUSTICE, et al.,**                   :
                                         :
         **Defendants.**         :

## MEMORANDUM OPINION

### I. INTRODUCTION

This opinion concerns Plaintiff James Biear's Freedom of Information Act[1] ("FOIA")

request for the production of certain public records in the custody of Defendant, the United

States Department of Justice, Criminal Division (the "Criminal Division").  The Criminal

Division has produced certain records and withheld others on the basis of specific FOIA

exemptions.  Presently before the Court is the Criminal Division's Second Motion to

Dismiss, or in the Alternative, for Summary Judgment (Doc. 116).  For the reasons that

follow, the Motion for Summary Judgment will be granted in part and denied in part.

### II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a series of FOIA requests that Biear submitted in 2012 and

2013, seeking "Any and all documents and electronic media assembled during any

---

[1] 5 U.S.C. § 552.

investigation (or review) containing the name James S. Biear (aka J. Steven Biear and James C. Biear), DOB [REDACTED], SSN: [REDACTED]." (*E.g.*, Doc. 1-1 at 4.)  He submitted these requests to several DOJ components, including the Criminal Division.[2]  The Criminal Division replied by requiring him to certify his identity and to submit a specific description of the records sought.  (Doc. 29-2 at 10, Ex. 2.)  He certified his identity but did not further elaborate on the records he sought.  (*Id.* at 13, Ex. 3.)  Before receiving further information from the Criminal Division, Biear filed an administrative appeal with the DOJ's Office of Information Policy (*id.* at 18, Ex. 5) and ultimately filed a complaint seeking injunctive relief (Doc. 1) when his appeal was denied.

The Criminal Division filed its first motion to dismiss, or in the alternative, for summary judgment on January 30, 2015.  (Doc. 51.)  Magistrate Judge Joseph Saporito issued a Report and Recommendation ("R&R"), recommending that Biear's complaint be dismissed with respect to his request to the Criminal Division for failure to exhaust administrative remedies.  (Doc. 78 at 34–38.)  Specifically, the R&R concludes that he "failed to exhaust his administrative remedies because he failed to respond to the Criminal Division's request that he refine his facially overbroad request for all investigatory documents containing his name, as well as its request that he specify the particular Criminal Division section or sections where he believed responsive documents might be found."  (*Id.*)  This Court adopted the R&R, and Biear appealed.

---

[2] Biear submitted two identical requests to the Criminal Division.

The Third Circuit reversed. *See generally Biear v. Att'y Gen. U.S.*, 905 F.3d 151 (3d Cir. 2018). The Circuit held that Biear had exhausted his administrative remedies and therefore was entitled to seek relief in district court, because his Criminal Division "request was sufficiently specific" and he "did not need to further narrow it to 'perfect' it." *Id.* at 155. Dispositive was the fact that Biear requested documents "containing" his name and information, not "relating" to him. *See id.* at 156. This language was sufficiently specific under FOIA because it enabled Criminal Division personnel to locate the requested records "with a reasonable amount of effort." *Id.* (quoting 28 C.F.R. § 16.3(b)). Accordingly, the Third Circuit remanded.

Thereafter, the Court granted the Criminal Division's motion to stay the complaint, to give the Criminal Division time to process Biear's FOIA request. (Doc. 108.) The stay was lifted on November 4, 2019, after the Criminal Division informed the Court that it had finished processing the request and had produced to Biear all non-exempt responsive documents. (Docs. 114, 115.) The Criminal Division filed the present motion on November 25, 2019. (Doc. 116.) Following several extensions, Biear filed a *pro se* response in opposition to the Criminal Division's Motion on June 19, 2020. (Doc. 136.)[3] The Motion is now ripe for disposition.

---

[3] In Biear's *pro se* response, as well as in previous correspondence with the Court, he requested the appointment of counsel. (Docs. 129, 136.) His request for counsel had already been denied without prejudice (Doc. 135 at 2), but was ultimately granted on June 1, 2021 (Doc. 141). By the time counsel was appointed, the present Motion was ripe for review. After "review[ing] the record," Biear's appointed counsel sought additional time "to file objections to the pending Report and Recommendation [Docket No. 124]" but did not seek to file a supplemental brief in opposition to the present Motion. (Doc. 146.)

### III. LEGAL STANDARD

#### A. Summary Judgment[4]

Summary judgment is appropriate "only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory

---

[4] The Court considers the Criminal Division's Motion (Doc. 116), framed in the alternative, as a motion for summary judgment and not as a motion to dismiss. The Court notes that Biear had adequate notice that the Motion might be treated as such, because the Criminal Division's Motion was framed in the alternative, and because Biear's response to the Motion uses the same "alternative" language. (Doc. 136); *see Scott v. Graphic Commc'ns Int'l Union, Loc. 97-B*, 92 F. App'x 896, 903 n.4 (3d Cir. 2004).

statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a

fact cannot be or is genuinely disputed must support the assertion by citing to particular

parts of materials in the record . . . or showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "Inferences

should be drawn in the light most favorable to the non-moving party, and where the non-

moving party's evidence contradicts the movant's, then the non-movant's must be taken as

true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992),

*cert. denied,* 507 U.S. 912 (1993). However, "facts must be viewed in the light most

favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott*

*v. Harris*, 550 U.S. 372, 380 (2007).

### B. FOIA

As the Third Circuit explained in *Davin v. United States Department of Justice*, FOIA

was enacted "to facilitate public access to Government documents" and "was intended to

create an expedient tool for disseminating information and holding the government

accountable." 60 F.3d 1043, 1049 (3d Cir. 1995) (quoting *U.S. Dep't of State v. Ray*, 502

U.S. 164, 173 (1991)) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969,

974 (3d Cir. 1981)). FOIA requires government agencies to "make promptly available any

records requested" unless the requested information falls under one of nine enumerated

exemptions. *Id.* (citing 5 U.S.C. § 552(b)).  FOIA "creates a strong presumption in favor of disclosure." *Id.* (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

In reviewing a summary judgment motion under FOIA, "a district court must perform a *de novo* review of a government agency's decision to withhold information" pursuant to FOIA exemptions.  *See W. Star Hosp. Auth. Inc. v. U.S. Dep't of Veterans Affs.*, No. 2:18CV1011, 2021 WL 9595459, at *2 (W.D. Pa. Feb. 12, 2021) (citing *Davin*, 60 F.3d at 1049).  "Because the opposing party (generally the requester) does not ordinarily have the factual information upon which the moving party (generally the agency) has relied, summary judgment in an FOIA case 'takes on a unique configuration.'" *McDonnell v. United States*, 4 F.3d 1227, 1241–42 (3d Cir. 1993).

To transform what might otherwise be an "'ineffective, inquisitorial proceeding against an agency that controls information into a meaningful adversarial process,' the reviewing court may order the government to prepare a '*Vaughn*' index, identifying each document withheld, the statutory exemption claimed, and a particularized description of how each document withheld falls within a statutory exemption." *Davin*, 60 F.3d at 1049 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 984 (3d Cir. 1981)).  The *Vaughn* index should enable the FOIA requester and the court "to derive . . . a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Id.* at 1050 (quoting *Hinton v. Dep't of Just.*, 844 F.2d 126, 129 (3d Cir. 1988)).

The Government bears the burden of showing that the withholding of information pursuant to a FOIA exemption is justified. *See id.* at 1051 (quoting *McDonnell*, 4 F.3d at 1241). "[A]n agency is entitled to summary judgment if its affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *American Friends Serv. Comm. v. Dep't of Defense*, 831 F.2d 441, 444 (3d Cir. 1987) (citations and internal quotation marks omitted)).[5]

## IV. ANALYSIS

The Criminal Division argues it is entitled to dismissal of the Complaint or, in the alternative, summary judgment, because it has established that it conducted an adequate search and properly applied FOIA exemptions to withhold responsive information. The Criminal Division points to its "declaration detailing the extent of its search for documents, the number of pages located and released, and to the extent any document was withheld or redacted, the applicable FOIA exemptions as set forth in a detailed 66 page *Vaughn* index." (Doc. 121 at 1.) Biear's *pro se* response in opposition generally "challeng[es]" the Criminal

---

[5] District courts may, in their discretion, examine *in camera* the contents of agency records that have been withheld. *Berger v. I.R.S.*, 288 F. App'x 829, 834 (3d Cir. 2008) (first citing 5 U.S.C. § 552(a)(4)(B); and then citing *Hinton v. Dep't of Just.*, 844 F.2d 126, 128 (3d Cir. 1988)). Such review "should not be resorted to 'routinely' and is unnecessary if agency affidavits or other showings are specific." *Id.* (quoting *Ferri v. Bell*, 645 F.2d 1213, 1225–26 (3d Cir. 1981)). Neither party has requested *in camera* review here, nor does the Court consider it necessary.

Division's motion, and in doing so, "rel[ies] upon all previous writings in this case, to include but not limited to the applicable appeal." (Doc. 136 at 1.)

### A. Adequacy of Search for Responsive Records

To comply with a FOIA request, an agency must "conduct a reasonable search for responsive records." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The focus of the Court's analysis is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Id.* (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). An agency can demonstrate the adequacy of its search by way of a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Id.* (quoting *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

To support the adequacy of its search, the Criminal Division submits the "Second Declaration of John E. Cunningham III" (the "Cunningham Declaration"). (Doc. 121-1.) Cunningham is a Trial Attorney in the Criminal Division, assigned to the FOIA and Privacy Act Unit within the Office of Enforcement Operations. (*Id.* ¶ 1.) Cunningham describes the Criminal Division's search for responsive records in detail. First, he outlines the numerous sections within the Criminal Division which "potentially could have responsive records to the request" (*id.* ¶ 12), the various record systems and databases in which these offices

maintain their records (*id.* ¶ 13), and the manners by which the email and other electronic records of individual attorneys can be searched (*id.* ¶¶ 14–15).

Cunningham explains that starting in November 2018, the FOIA/PA Unit sent search requests to the Fraud Section, the Money Laundering and Asset Recovery Section, and the Electronic Surveillance Unit, each of which searched their respective databases and located no responsive records. (*Id.* ¶ 16.) A search request was also sent to the Criminal Division's Information Technology Management Unit ("ITM"), which administers the email system. (*Id.* ¶¶ 15–16.) ITM identified responsive records belonging to the Criminal Division's Office of International Affairs ("OIA"). (*Id.* ¶ 16.) Together, ITM and OIA identified seven record custodians who had worked on matters involving Biear and relating to OIA's Mutual Legal Assistance Treaty ("MLAT") database. (*Id.* ¶ 17.)

Through ITM and the seven custodians, using search terms including Biear's name, aliases, social security number, and date of birth, within the date range of 1/1/2010 to 12/31/2011, the Criminal Division located 2,116 pages of potentially responsive documents. (*Id.*) After processing the documents, the Criminal Division determined that 1,645 of those pages were either duplicative or non-responsive. (*Id.* ¶ 17 n.2.)

Biear has not alleged any shortcomings or deficiencies with respect to the search, nor has the Court identified any. On the contrary, Cunningham's account of his team's efforts to locate responsive documents was "reasonably detailed" and suffices to establish that the search was adequate.

### B. Application of Exemptions

The Criminal Division must also demonstrate that its withholding of information was justified by one of nine enumerated FOIA exemptions. The Criminal Division is entitled to summary judgment if the Cunningham Declaration and *Vaughn* Index together "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Davin,* 60 F.3d at 1051 (quoting *American Friends Serv. Comm.,* 831 F.2d at 444). Biear has not alleged, nor has the Court otherwise identified, any evidence in the record that controverts the Criminal Division's attestations, nor any evidence of bad faith. Accordingly, the Criminal Division prevails as long as their attestations serve to demonstrate a logical connection between the withheld information and the applicable exemption in a sufficiently specific manner. The Court finds that they have, with few exceptions described *infra*.

The Criminal Division asserts five exemptions, each of which is set forth in the statute itself: 5 U.S.C. § 552(b)(3) ("Exemption 3"), (b)(5) ("Exemption 5"), (b)(6) ("Exemption 6"), (b)(7)(C) ("Exemption 7(C)"), and (b)(7)(D) ("Exemption 7(D)"). On the basis of these exemptions, the Criminal Division withheld in full 110 otherwise responsive documents, totaling 322 pages. (Doc. 121 at 15.) All of the documents were withheld on the basis of multiple exemptions.

Where feasible, the Court addresses the application of each of the FOIA exemptions to these documents categorically. The Court's categorical conclusions apply to each document withheld pursuant to that exemption, unless otherwise specified. Individual documents raising unique issues are addressed separately.

### 1. Nature of Withheld Documents

As the Cunningham Declaration explains, each of the 110 withheld documents relate to requests to foreign governments for Mutual Legal Assistance in a Criminal Matter ("MLAT") pursuant to two different treaties. (Cunningham Declaration ¶ 25.) MLATs facilitate the "sharing of information and evidence between treaty signatories related to criminal investigations and prosecutions." (Doc. 121 at 16.) The Criminal Division submitted the MLAT requests here to the governments of Denmark and Australia pursuant to respective treaties between those countries and the United States. (*Id.*)

The requests were made in furtherance of the investigation and prosecution of Biear by the U.S. Attorneys' Offices of the Southern District of New York and the District of Vermont. (*Id.*) Documents relating to the MLAT requests therefore contain "factual information and legal theories of the investigations." (Doc. 121 at 16–17.) They also

> outline the history [of] legal or law enforcement actions taken against Biear, summarize the relevant facts and evidence of the underlying investigations, explain the statutory basis for the alleged criminal conduct, provide the personal information of the subject of the investigation and prosecution, and outline the assistance requested and the procedures to be followed.

(Doc. 121-1 ¶¶ 22, 24.)

## 2. *Exemption 3*

First, the Court finds Exemption 3 was properly applied only to documents

concerning the MLAT request to Denmark. The Criminal Division withheld 101 documents in

full pursuant to Exemption 3, which covers information protected by a statute other than

FOIA itself.[6]   It covers information "specifically exempted from disclosure by statute" if that

statute either "requires that the matters be withheld from the public in such a manner as to

leave no discretion on the issue" or "establishes particular criteria for withholding or refers to

particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  As the Third Circuit

explained in *McDonnell*,

> Exemption 3 differs from the other FOIA exemptions in that its applicability
> depends less on the detailed factual contents of specific documents.
> *Association of Retired R.R. Workers v. United States R.R. Retirement Bd.,* 830
> F.2d 331, 336 (D.C. Cir. 1987). Instead, the sole issues for decision in
> determining the applicability of Exemption 3 to a particular set of documents
> are the existence of either type of relevant statute and the inclusion of withheld
> material within the statute's coverage. *Id.*

4 F.3d at 1246.

The Criminal Division contends that the two MLATs at issue, between the United

States and Denmark ("US-Den. MLAT")[7] and the United States and Australia ("US-Austl.

---

[6] On the basis of Exemption 3, the Criminal Division withheld Documents 1 through 42; 45 through 50, 52, 53, 55 through 79, 81 through 83, 86 through 89, 91 to 108 and 110.  (*See* Doc. 121-1, Ex. 6, *Vaughn* Index.)

[7] Instrument Between the Kingdom of Denmark and the United States of America, as contemplated by Article 3(d) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, U.S.—Den., signed June 23, 2005, S. Treaty Doc. No. 109-13 (2006) (hereinafter "US-Den. MLAT").  The US-Den. MLAT refers to the agreement between Denmark, as a

MLAT")[8], respectively, are qualifying non-disclosure statutes under Exemption 3, and that

the records withheld are covered by the treaties' confidentiality provisions. Before

addressing whether the treaties are qualifying non-disclosure statutes under (b)(3)(A)(i) or

(b)(3)(A)(ii), the Court must first resolve a threshold question: whether the treaties are

properly construed as statutes.

On its face, Exemption 3 concerns statutes, which technically, the MLATs are not.

Whether statutes include treaties for purposes of Exemption 3 is a question not yet

answered by the Third Circuit. But at least two other courts have faced the question and

determined that treaties, specifically MLATs such as these, are properly construed as

statutes. Those courts held further that the MLATs were qualifying non-disclosure statutes.

*See Grynberg v. U.S. Dep't of Just.*, 302 F. Supp. 3d 532, 539–40 (S.D.N.Y. 2018), *aff'd*,

758 F. App'x 162, 164–65 (2d Cir. 2019); *Dongkuk Int'l, Inc. v. U.S. Dep't of Just.*, 204 F.

Supp. 3d 18 (D.D.C. 2016). This Court reaches the same conclusion.

The *Dongkuk* court held that an MLAT between the United States and Korea was a

"'statute' that can be analyzed under Exemption 3." 204 F. Supp. 3d at 25. The court

decided first that the MLAT was "equivalent to an act of the legislature" because it was a

bilateral treaty ratified by the Senate. *Id.* (citing *Medellin v. Texas*, 552 U.S. 491 (2008)).

---

Member State of the European Union ("EU"), which operates pursuant to the larger treaty between the United States and the EU.

[8] Treaty Between the Government of the United States of America and the Government of Australia on Mutual Assistance in Criminal Matters, U.S.—Austl., signed Apr. 30, 1997, S. Treaty Doc. No. 105-27 (1997) (hereinafter "US-Austl. MLAT").

Discussing *Medellin*, the court distinguished between a self-executing and non-self-executing treaty and noted that the former "operates of itself without the aid of any legislative provision" and therefore has "automatic domestic effect as federal law upon ratification." *Id.* at 25–26. Because the Korean MLAT was self-executing, it became equivalent to a statute upon ratification by the Senate. *Id.* at 26. The *Grynberg* court was persuaded by *Dongkuk*, and held that an MLAT with Switzerland, also a Senate-ratified self-executing treaty, qualified as a statute. *See* 302 F. Supp. 3d at 539.

Both the US-Den. and US-Austl. MLATs are Senate-ratified, self-executing treaties as well. The US-Den. MLAT was signed by the United States on June 23, 2005, ratified by the Senate on September 23, 2008, and entered into force on February 1, 2010. *See* US-Den. MLAT. Review of the overarching MLAT between the United States and the European Union, together with the Instrument implementing the MLAT between the United States and Denmark, indicates that the US-Den. MLAT is also self-executing. *See* Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, U.S.—Den., signed June 23, 2005, S. Treaty Doc. No. 109-13 (2006), Executive Summary ("The U.S.-EU Mutual Legal Assistance Agreement and bilateral instruments are regarded as self-executing treaties under U.S. law, and thus will not require implementing legislation for the United States."); *id.* art. 18 ("This Agreement shall enter into force on the first day following the third month after the date on which the Contracting Parties have exchanged instruments indicating that they have completed their internal

14

procedures for this purpose."); US-Den. MLAT ¶ 6(a) ("This Instrument shall enter into force on the date of entry into force of the U.S.-EU Mutual Legal Assistance Agreement.").

The US-Austl. MLAT was signed on April 30, 1997, ratified by the Senate on October 21, 1998, and entered into force on September 30, 1999. *See* US-Austl. MLAT. It is also self-executing. *See id.*, Letter of Submittal ("The Treaty is designed to be self-executing and will not require new legislation."); *id.* art. 20 ("This Treaty shall enter into force on the date on which the Contracting Parties have exchanged written notification that they have complied with their respective requirements for the entry into force of this Treaty.").

For purposes of determining whether they are properly construed as statutes under Exemption 3, these MLATS are therefore indistinguishable from those considered by the *Dongkuk* and *Grynberg* courts. This Court is persuaded that they, too, are "equivalent to an act of the legislature." *Dongkuk Int'l, Inc.*, 204 F. Supp. 3d at 25.

The next question is whether the MLATs are qualifying non-disclosure statutes under Exemption 3. To qualify, they must either require that qualifying matters be "withheld from the public in such a manner as to leave no discretion on the issue," 5 U.S.C. § 552(b)(3)(A)(i), or "establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." *Id.* § 552(b)(3)(A)(ii). The Criminal Division contends that both MLATs qualify, because each requires "the Requested State to treat a request and its contents as confidential when so specified by the Requesting State." (Cunningham Declaration ¶ 27.)

The Court is persuaded that both MLATs qualify as non-disclosure statutes under (b)(3)(A)(ii).[9]  Indeed, Article 7 of the US-Den. MLAT states, in relevant part, "The requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the requesting State." US-Den. MLAT, art. 7.  Such language suffices to establish "particular criteria for withholding"—namely, whether the requesting State has requested confidentiality.

Article 5 of the US-Austl. MLAT states, in relevant part, "The Requested State shall use its best efforts to keep confidential a request, its contents, and any action taken on the request if such confidentiality is requested by the Central Authority of the Requesting State." US-Austl. MLAT art. 5(5).  Furthermore, Article 7 provides that "(1) If the Central Authority of the Requested State so requests, the Requesting State shall not use any information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding other than that described in the request without the prior consent of the Requested State" and "(2)

---

[9] Because Exemption 3 is disjunctive, it is sufficient that the Court concludes the MLATs qualify under (b)(3)(A)(ii).  The Court notes only that the Criminal Division contradicts itself as to which subsection of Exemption 3 applies.  The Criminal Division contends in its brief and in the Cunningham Declaration that the US-Den. MLAT "does not permit the parties discretion to disclose documents once confidentiality has been requested," *i.e.*, that the MLAT qualifies under (b)(3)(A)(i).  (Doc. 121 at 19–20; Cunningham Declaration ¶ 28).  However, both the Declaration and the *Vaughn* Index cite 5 U.S.C. § 552(b)(3)(A)(ii), not (b)(3)(A)(i).  (*See generally Vaughn* Index; Cunningham Declaration ¶ 26 n.5.)

With respect to Australia, the Criminal Division argues in its brief that the "request was made pursuant to a treaty which required subject matters to be withheld from the public in such a manner as to leave no discretion to the parties." (Doc. 121 at 20.)  The Cunningham Declaration summarily states the same. (Cunningham Declaration ¶ 30.)  But it only directly addresses (b)(3)(A)(ii), explaining that "[t]he U.S.-Austl., MLAT satisfies the latter criteria in that it 'refers to a particular type [] of matter [] to be withheld.'" (*Id.*)

The Central Authority of the Requested State may request that information or evidence

furnished under this Treaty be kept confidential or be used only subject to terms and

conditions it may specify." *Id.* art. 7(1), (2). In the case of the US-Austl. MLAT, then, either

the requesting *or* requested state may require confidentiality. Such language is sufficient to

qualify under (b)(3)(A)(ii). Notably, the confidentiality language in both the US-Den. and

US-Austl. MLATs closely resembles that of the MLAT at issue in *Dongkuk*. *See* 204 F.

Supp. 3d at 28.

The only remaining question is whether the confidentiality provisions in the two

MLATs cover the information actually withheld. An answer in the affirmative requires that

both (1) the confidentiality provisions in each of the MLATs were invoked; and (2) the

documents withheld would breach those provisions if disclosed. This question is easily

resolved with respect to the US-Den. MLAT. The Criminal Division indicates that Document

Nine in its *Vaughn* Index is a "cover letter between OIA and the Ministry of Justice,

Denmark" that "seeks the confidential treatment of the [Denmark] request." (Doc. 121-1, Ex.

6 at 4.) Such request is of the type contemplated by Article 7 of the US-Den. MLAT, thereby

invoking the confidentiality provision. Any matter relating to the US-Den. MLAT request or

its contents is therefore properly withheld, and the *Vaughn* Index is sufficiently specific to

demonstrate that application was proper with respect to each document concerning the US-

Den. MLAT request. Accordingly, the Criminal Division's Motion will be granted with respect

to those documents.

The US-Austl. MLAT-related documents are more complicated. The Criminal Division acknowledges that "confidentiality was not expressly requested or invoked by the United States with regard to the US-Austl. MLAT request," but argues "it can be reasonably inferred that confidentiality was impliedly requested." (Cunningham Declaration ¶ 46.)[10] The Criminal Division cites *Grynberg*, wherein the court deferred to the understanding of a DOJ attorney that "all of the articles contained in the U.S.–Swiss MLAT, even if not specifically invoked, apply to all evidence and information provided by either country." 302 F. Supp. 3d at 540. However, the *Grynberg* court also based their decision on the agency's assertion that all MLAT materials at issue contained cover letters with standard language providing that the article of the MLAT containing the confidentiality provisions applied and that "any public disclosure . . . including disclosure pursuant to [FOIA] requests . . . would violate the laws applicable to [the Swiss authorities]." *Id.*

While the Criminal Division argues its understanding that confidentiality was implied here is entitled to the same deference as in *Grynberg*, it does not suggest that the US-Austl. MLAT materials reflect the same standard language prohibiting disclosure. Without this additional—and more compelling—indicator that confidentiality was intended, the Court is not persuaded that Exemption 3 applies. As necessary under Exemption 3, the US-Austl. MLAT "establishes particular criteria for withholding": whether either party to the treaty

---

[10] Cunningham discusses the lack of an express request for confidentiality with respect to Exemption 7(D), but inexplicably declines to address it with respect to Exemption 3. (*See* Cunningham Declaration ¶ 46.) The Exemption 7(D) discussion nonetheless informs the Court's Exemption 3 analysis.

requested confidentiality.  5 U.S.C. § 552(b)(3)(A)(ii).  If those criteria are not met, the

exemption cannot apply.  Because the Criminal Division has failed to demonstrate that the

necessary criteria were met, Exemption 3 is not properly applied with respect to documents

regarding the US-Austl. MLAT request.  Therefore, the Court must determine whether each

of the documents improperly withheld on this basis are properly withheld under another

asserted exemption.

### 3. Exemption 7(D)

Exemption 7(D) justifies the withholding of most documents not covered by

Exemption 3, including those concerning the US-Austl. MLAT.  The Criminal Division

asserted Exemption 7(D) with respect to 92 documents.[11]  Exemption 7(D) applies to

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . .
> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record
> or information compiled by criminal law enforcement authority in the course of
> a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  In the context of criminal investigations, this exemption applies to

information provided to law enforcement pursuant to both express and implied assurances

of confidentiality.  *See U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 179–80 (1993).  And

Exemption 7(D) is commonly applied to foreign law enforcement authorities, which are

---

[11] The following documents were withheld pursuant to Exemption 7(D): Documents 1 through 42;
45 through 50; 52; 56 through 65; 67 and 68; 77 through 80; 82; and 85 through 110.  (Doc. 121-1, Ex. 6.)

"types of sources explicitly contemplated by the text" of the exemption. *Halpern v. F.B.I.*,

181 F.3d 279, 299 (2d Cir. 1999).

Accordingly, the confidentiality implied by the US-Austl. MLAT, although insufficient

to meet the MLAT's "particular criteria for withholding" under Exemption 3, suffices to satisfy

Exemption 7(D), because 7(D) is widely held to cover implied assurances of confidentiality.

The Cunningham Declaration asserts that the Criminal Division believed "confidentiality was

impliedly requested" with respect to the United States' requests for assistance from

Australia. (Cunningham Declaration ¶ 46.) Specifically, the Criminal Division contends that

"it was impliedly understood that all of the articles contained in the U.S.-Austl., MLAT,

including the confidentiality provisions, even if not specifically invoked, applied to all

evidence and information provided by either country." (*Id.*) The Government's position is

accorded a presumption of good faith, and Biear offers no evidence to the contrary. *See*

*Berger v. I.R.S.*, 487 F. Supp. 2d 482, 493 (D.N.J. 2007), *aff'd*, 288 F. App'x 829 (3d Cir.

2008) (quoting *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

The Court is persuaded that the information was exchanged under an implied

assurance of confidentiality. Moreover, the *Vaughn* Index demonstrates that 7(D) was

applied to documents containing information provided by the Australian governments

pursuant to this assurance. For that reason, Exemption 7(D) justifies the withholding of

documents concerning the US-Austl. MLAT request, and the Criminal Division's Motion will be granted with respect to these documents.[12]

### 4. Ambiguous MLAT References

A small group of documents are ambiguous as to which MLAT request is at issue. As set forth *supra*, documents referencing the US-Den. MLAT request are properly withheld under Exemption 3, and documents containing information exchanged under the US-Austl. MLAT are properly withheld under Exemption 7(D). Some of the entries in the *Vaughn* Index, however, assert that a document is withheld because it references an MLAT without specifying *which* MLAT. In the instances where both Exemption 3 and Exemption 7(D) are asserted to justify the withholding of those documents, the lack of specification is inconsequential. But where only Exemption 3 is asserted—not Exemption 7(D)—the document would not be properly withheld if the MLAT it refers to is that with Australia, and therefore the *Vaughn* Index is not sufficiently specific to justify those particular exemptions.

The following documents refer to an unspecified MLAT: 53, 71–75, 81, and 83. Where the withheld documents refer to the US-Den. MLAT, the Criminal Division must withhold them only on the condition that it submits an affidavit attesting that the documents

---

[12] Information exchanged pursuant to the US-Den. MLAT request is also covered by Exemption 7(D), because it was provided pursuant to express assurances of confidentiality. *See supra* at 17–18. The Court need not address the application of 7(D) to the Denmark documents, however, because with one exception, these documents are already properly exempted under Exemption 3. The exception is Document 109, which references the US-Den. MLAT but to which, inexplicably, the Criminal Division did not apply Exemption 3. (*See* Doc. 121-1, Ex. 6.) The document is nonetheless properly withheld under Exemption 7(D).

are withheld on the basis of the US-Den. MLAT.  On the other hand, those documents

referring to the US-Austl. MLAT must be disclosed, because Exemption 7(D) was not

asserted, and Exemption 3 does not apply.  For the foregoing reasons, the Criminal

Division's Motion will be denied with respect to Documents 53, 71–75, 81, and 83, subject to

the condition set forth *supra*.[13]

### 5. Exemption 5

The Criminal Division also withheld 46 documents on the basis of Exemption 5,

which covers "inter-agency or intra-agency memorandums or letters that would not be

available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §

552(b)(5).  The exemption "incorporates the privileges available to Government agencies in

civil litigation," including the deliberative process privilege.  *U.S. Fish & Wildlife Serv. v.*

*Sierra Club, Inc.*, 209 L. Ed. 2d 78, 141 S. Ct. 777, 785 (2021).  ["T}he deliberative process

privilege shields from disclosure 'documents reflecting advisory opinions, recommendations

and deliberations comprising part of a process by which governmental decisions and

policies are formulated.'"  *Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150

(1975)).  It exempts documents that are "predecisional," meaning they were "generated

before the agency's final decision on the matter," and "deliberative," meaning they were

"prepared to help the agency formulate its position."  *Id.* (first citing *Sears*, 421 U.S. at 150–

---

[13] Any documents disclosed may be redacted as necessary to preserve the protection of third
parties under Exemptions 6 and 7(C), as set forth *infra*.

52; and then citing *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168,

184–86 (1975)).  Though context must be considered, "drafts" are often protected by the

privilege.  *See id.*

Most of the 46 documents to which Exemption 5 was applied are already properly

withheld on the basis of Exemptions 3 or 7(D), but the following group of documents are not.

In each case, the relevant document description failed to provide the Court with sufficiently

specific facts to justify the application of Exemptions 3 or 7(D).  So, the Court must

determine whether Exemption 5 justifies the withholding of these documents: 44, 66, 94, 99,

and 102.

> **Doc. 44**:  Email from OIA attorney to AUSA in Vermont with subject line: "Re:
> James BIEAR MLAT Request (Australia)."  Exemptions 5, 6, and 7(C) are
> asserted.
>
> **Doc. 66**:  Email providing instructions from an OIA attorney to an OIA paralegal
> regarding an unspecified Biear MLAT.  Exemptions 3, 5, 6, and 7(C) are
> asserted.
>
> **Doc. 94**:  Email chain between OIA attorneys with subject line: 'RE: Biear
> Request [SEC=UNCLASSIFIED].'"  Exemptions 3, 5, 6, 7(C), and 7(D) are
> asserted.
>
> **Doc. 99**:  Document in an email chain between OIA attorneys with subject line:
> "RE: US v. James Biear, S3 09 Cr. 1185 (PKC)."  Exemptions 3, 5, 6, 7(C), and
> 7(D) are asserted.
>
> **Doc. 102**:  Document in an email chain between OIA attorneys with subject line
> "RE: [DRAFT] RE: Biear and [   ]."  Exemptions 3, 5, 6, 7(C), and 7(D) are
> asserted.

While these descriptions are sparse, the Court finds that, together with the

explanation set forth in the Cunningham Declaration, the Criminal Division has shown that

these documents are both predecisional and deliberative.  The Cunningham Declaration

explains,

> [T]he records reflect the deliberations of DOJ attorneys regarding the status of
> their own investigations. The information contained in the records expresses
> the authors' opinions regarding the sufficiency of the evidence to support the
> offenses being investigated and it considers the applicability of the evidence
> and information maintained by the foreign governments to the offenses being
> investigated in the United States. Release of this information could have a
> chilling effect on frank and open discussions with foreign law enforcement
> partners and undermine collaborative international law enforcement efforts. In
> addition, disclosure of DOJ attorneys' opinions and recommendations could
> discharge the candid exchange of ideas and analysis necessary to conduct a
> thorough investigation in the United States.

(Cunningham Declaration ¶ 35.)  Indeed, the documents listed above are internal

communications between DOJ attorneys that clearly concern the investigation and

prosecution of Biear, and were "generated before the agency's final decision on the matter."

*U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785.  They are deliberative in that their disclosure

"would inaccurately reflect or prematurely disclose the views of the agency, suggesting as

agency position that which is as yet only a personal position."  *Wolk L. Firm v. United States*

*of Am. Nat'l Transportation Safety Bd.*, 392 F. Supp. 3d 514, 525 (E.D. Pa. 2019); *see id.*

(holding Exemption 5 applies to "materials [that] reflect the give-and-take of the consultative

process, including draft documents and correspondence containing questions and

answers"). The Criminal Division has therefore met its burden with respect to the application of Exemption 5 to the foregoing documents.

### 6. Exemptions 6 and 7(C)

Finally, the Criminal Division jointly asserted Exemptions 6 and 7(C) to each of the 110 documents, to protect against invasions of personal privacy. Specifically, the exemptions are asserted to protect "federal law enforcement and support personnel that participated in investigations related to Biear; foreign law enforcement officials and investigators; foreign business employees; and third party target/subjects of the criminal investigation related to Biear." (Doc. 121 at 28.) Most of the documents withheld on the basis of Exemptions 6 and 7(C) are properly withheld under Exemptions 3, 5, or 7(D), for the reasons set forth *supra*. In this section the Court addresses those few documents not covered by other exemptions: Documents 1, 4, 21, 43, 51, 54–55, 76, and 84.[14]

**Doc. 1**: "[N]otice of closed files form" referring to Biear's file.

**Doc. 4**: FedEx shipping label.

**Doc. 21**: FedEx shipping receipt sent from OIA attorney to AUSA in Vermont.

---

[14] Some of these documents (1, 4, 21, 55, 76) improperly assert Exemptions 3 or 7(D). These exemptions are not justified because the corresponding document descriptions fail to "demonstrate a logical connection between the information and the claimed exemption[s]." *Davin*, 60 F.3d at 1051. In other words, the descriptions do not tie the documents to either MLAT request. As such, they are properly withheld only if Exemptions 6 and 7(C) apply.

***Doc. 43***: "[A]utomatic notification email that the Biear MLAT has a Next Action due today," reminding recipient that a task needs to be completed by the specified date, and containing "references to other unrelated cases."[15]

***Doc. 51***: Email confirmation of FedEx delivery.

***Doc. 54***: Financial spreadsheet containing information for a third party related to the Biear investigation.

***Doc. 55***: Out-of-office email notification from Australian official to OIA attorney.

***Doc. 76***: Out-of-office email notification sent to OIA attorney.[16]

***Doc. 84***: Out-of-office email notification from one OIA attorney to another.

(Doc. 121-1, Ex. 6.)

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). And Exemption 7(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). The two exemptions are frequently

---

[15] Despite the reference to an unspecified MLAT, the Criminal Division did not assert Exemption 3 or 7(D). And while Exemption 5 was asserted, the Criminal Division failed to demonstrate how an automatic notification email could reflect predecisional and deliberative intra-agency communications. Absent a logical connection between the content of the document and Exemption 5, the exemption is not properly applied.

[16] This document references the US-Austl. MLAT but the Criminal Division did not assert Exemption 7(D).

asserted together and require a similar analysis, though 7(C) applies more broadly.  *See*

*McDonnell*, 4 F.3d at 1254.  Accordingly, the Court starts its analysis with 7(C).

The records at issue were compiled for law enforcement purposes, specifically to

facilitate the investigation and prosecution of Biear, thereby satisfying the first requirement

of 7(C).  To determine whether the second requirement is met, *i.e.*, whether the information

contained within them "could reasonably be expected to constitute an unwarranted invasion

of personal privacy" if produced, requires the Court to balance the asserted privacy interest

against the interest of the public.  *See Davin*, 60 F.3d at 1058 (describing application of 7(C)

as "a de novo balancing test, weighing the privacy interest and the extent to which it is

invaded on the one hand, against the public benefit that would result from disclosure, on the

other").

FOIA permits the Criminal Division "to withhold information identifying private

citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to

confirm or refute compelling evidence that the agency is engaged in illegal activity.'"

*O'Brien v. Dep't of Just.*, No. CV 20-0092, 2022 WL 2651850, at *5 (E.D. Pa. July 8, 2022)

(citing *Bartko*, 898 F.3d at 71), *aff'd sub nom. O'Brien v. U.S. Dep't of Just.*, No. 22-2335,

2023 WL 2770824 (3d Cir. Apr. 4, 2023).  This privacy interest extends to law enforcement

personnel, who "also have a significant interest in keeping their identities secret." *Baez v.

F.B.I.*, 443 F. Supp. 2d 717, 725 (E.D. Pa. 2006) (citing *Landano*, 956 F.2d at 426–27).  On

the other hand, the only relevant *public* interest for purposes of 7(C) is that on which FOIA is

premised: "the citizens' right to be informed about 'what their government is up to.'" *Reps.*
*Comm.*, 489 U.S. at 773. The public side of the balancing test is therefore limited to
"shed[ding] light on an agency's performance of its statutory duties." (Doc. 96 at 21 (citing
*Reps. Comm.*, 489 U.S. at 773).)

Review of the *Vaughn* Index entries for Documents 4, 21, 51, 54–55, 76, and 84
demonstrates that the Criminal Division properly applied 7(C), because the matter
withheld—including names, addresses, and financial information—"could reasonably be
expected to constitute an unwarranted invasion of personal privacy" if released. 5 U.S.C. §
552(b)(7)(C). When balanced against the only relevant public interest, the privacy interests
prevail. The records at issue shed little light on the Criminal Division's "performance of its
statutory duties." *Reps. Comm.*, 489 U.S. at 773. And Biear has not proposed a narrower
lens through which the Court should consider the public interest; for example, he has not
alleged impropriety on behalf of the Criminal Division. *See, e.g., Levy v. U.S. Postal Serv.*,
567 F. Supp. 2d 162, 168 (D.D.C. 2008) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d
1197, 1205 (D.C. Cir. 1991)). The Court is not persuaded that the withheld information
would apprise the public as to "what their government is up to." *Id.* The application of
Exemption 7(C) was therefore proper, with two exceptions.

The Criminal Division has failed to demonstrate that Exemption 7(C) justifies the
withholding in full of Documents 1 and 43. The respective document descriptions do not
assert that they contain sensitive third party information. But even assuming the documents

do contain third party information, the nature of the documents, a "notice of closed files form" and an "[a]utomatic email notification" regarding tasks relating to the "Biear MLAT," suggests they may contain reasonably segregable, responsive information.  *See* 5 U.S.C. § 552(b) (requiring that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt"); *see also Abdelfattah*, 488 F.3d at 186 ("An 'agency cannot justify withholding an entire document simply by showing that it contains some exempt material.'" (quoting *Mead Data Central v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977))).  Documents 1 and 43 must therefore be disclosed, subject to the redaction of third party information as necessary under 7(C).

## IV. Conclusion

For the aforementioned reasons, the Criminal Division's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 116) will be denied in part and granted in part. The Motion will be denied with respect to the specific FOIA exemptions as applied to the documents listed *supra* at pages 22 and 29.  With respect to all other exemptions asserted by the Criminal Division, the Motion will be granted and summary judgment will be entered in favor of the Criminal Division.  A separate order follows.

Robert D. Mariani
United States District Judge

29