## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES BIEAR,** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:14-CV-1488** |
| | : | **(JUDGE MARIANI)** |
| **UNITED STATES DEPARTMENT** | : | |
| **OF JUSTICE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This opinion concerns the application of Freedom of Information Act[1] ("FOIA")

exemptions to certain public records in the custody of Defendant Federal Bureau of

Investigation (the "FBI") and requested by Plaintiff James Biear.  Those records were either

produced with redactions or entirely withheld by the FBI.  On March 9, 2020, Magistrate

Judge Joseph Saporito issued a Report and Recommendation ("R&R"), finding, on the basis

of a detailed affidavit submitted by the FBI, that the FBI properly applied the relevant FOIA

exemptions, and recommending that this Court grant the FBI's motion for summary

judgment.  (Doc. 124.)  Presently before the Court are Biear's objections to the R&R (Doc.

148).

---

[1] 5 U.S.C. § 552.

## II. Background

The long and convoluted history of this matter is accurately set forth in the R&R (Doc. 124 at 1–8) and many of the details need not be repeated here.  In summary, the case arises out of a series of FOIA requests that Biear submitted in 2012 and 2013, seeking "Any and all documents and electronic media assembled during any investigation (or review) containing the name James S. Biear (aka J. Steven Biear and James C. Biear), DOB [REDACTED], SSN: [REDACTED]." (*E.g.,* Doc. 1-1 at 4.)  The requests were submitted to seven DOJ components, including the FBI.  Biear ultimately filed a complaint for injunctive relief when his requests were not satisfied.

This Court previously entered summary judgment for the FBI on the basis that Biear's FOIA request was moot and administrative remedies had not been exhausted. (Doc. 78 at 43–46, Doc. 84.)  Biear appealed to the Third Circuit, which remanded in his favor.  *Biear v. Attorney Gen. United States*, 905 F.3d 151, 158–59 (3d Cir. 2018).  The parties again filed dispositive motions.  The FBI filed a motion to dismiss or for summary judgment (Doc. 95), and Biear responded with a *pro se* motion for summary judgment (Doc. 102).  The present R&R aims to resolve these cross-motions.  (Doc. 124.)

In the R&R, Magistrate Judge Saporito thoroughly reviewed the FBI's description of its search for responsive records, and its "highly detailed, albeit categorical" justification for each exemption, as set forth in a declaration by David M. Hardy, Section Chief of the Record/Information Dissemination Section, Record Management Division, of the FBI (the

"Hardy Declaration"). (*Id.* at 7.) The R&R concludes, first, that "[o]n its face, Hardy's Declaration describes a reasonably adequate search for responsive documents within the FBI's records systems," and second, that the Hardy Declaration's "detailed explanation of the agency's grounds for redacting or withholding the exempt information by category" sufficiently demonstrates that the information was properly redacted. (*Id.* at 16, 36.) Accordingly, Magistrate Judge Saporito recommended that the FBI's motion to dismiss or for summary judgment be granted, and Biear's cross-motion for summary judgment be denied. (*Id.* at 36–37.)

Following the appointment of counsel and several deadline extensions, Biear filed objections to the R&R on August 16, 2021. (Doc. 148.) Biear first objects that "the declaration on which Judge Saporito relied does not provide this Court with an adequate factual basis to determine whether the [FBI] complied with its obligations under [FOIA]." (*Id.* at 2.) Specifically, he argues "the FBI's response to the FBI Request fails to 'sufficiently describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemptions.'" (*Id.* at 8 (quoting *Davin v. U.S. Dep't of Just.*, 60 F.3d 1043, 1065 (3d Cir. 1995)).)

Second, Biear contends "the FBI has provided only conclusory statements regarding the segregability of the information it withheld and redacted, thus depriving Biear of sufficient information to analyze the FBI's segregability determinations." (*Id.* at 2.) He

argues "the FBI has provided only conclusory statements regarding the segregability of withheld and redacted information." (*Id.* at 14 (citing *Davin*, 60 F.3d at 1052).)  Biear asks the Court to reject the R&R and "direct the FBI to submit an appropriate Vaughn index or, in the alternative, submit the withheld and redacted documents to the Court for an *in camera* review." (*Id.* at 17.)

The FBI concurred and agreed to provide a "more detailed *Vaughn* index" to give "both Mr. Biear and the Court . . . better context to consider the applicable FOIA exemptions."[2] (Doc. 152 at 2.)  In compliance with this Court's subsequent order, the FBI filed a second *Vaughn* index on January 13, 2022. (Doc. 154-2.)  Thereafter, on April 22, 2022, the parties participated in a status conference with the Court to determine how to proceed in light of the new *Vaughn* index. (*See* Doc. 159.)  As a result of that conference, the parties agreed that Biear would provide a supplemental filing stating his remaining objections to specific documents and the basis for those objections. (*Id.*)  The FBI would then provide to the Court unredacted copies of the documents to which Biear specifically objected for *in camera* review. (*Id.*)

On May 24, 2022, Biear filed a list of 286 pages of documents, all redacted or fully withheld, to which he objected. (Doc. 161.)  The list included the reasons for Biear's objections, although with few exceptions, he asserted the same reasoning for each fully

---

[2] *See generally Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).

withheld document,[3] and similar reasoning for each partially redacted document.[4]  (*See generally* Doc. 161.)  On July 15, 2022, the FBI provided copies of those 286 pages to the Court for *in camera* review.  (*See* Doc. 162.)  Having reviewed the documents submitted, the matter is now before the Court.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Gonzalez v. AMR*, 549

---

[3] For example, with respect to Bates no. Biear-3, Plaintiff provides the following reason:

The FBI withheld this document in full without "provid[ing] a factual recitation of why certain materials are not reasonably segregable" and without making any attempt to distinguish this document from others that were produced in whole or with redactions. [*Davin*, 60 F.3d at 1052]. Moreover, the FBI has not "describe[d] the process by which [the FBI] determined that all reasonably segregable material of each of the withheld documents or portions of documents ha[s] been released," it simply states, in a conclusory fashion, that it made segregability determinations. *Id.* In light of the foregoing, Plaintiff has been deprived of sufficient information to analyze the FBI's segregability determination. *Id.* Plaintiff requests in camera review.

(Doc. 161 at 4.)

[4] For example, with respect to Bates no. Biear-4, Plaintiff provides the following reason:

This page contains potentially overinclusive redactions but the FBI has not "provid[ed] a factual recitation of why certain materials [within these broad redactions] are not reasonably segregable" and has not made any attempt to distinguish this document from others that were produced in whole or with redactions. [*Davin*, 60 F.3d at 1052]. Moreover, the FBI has not "describe[d] the process by which [the FBI] determined that all reasonably segregable material of each of the withheld documents or portions of documents ha[s] been released," it simply states, in a conclusory fashion, that it made segregability determinations. *Id.* In light of the foregoing, Plaintiff has been deprived of sufficient information to analyze the FBI's segregability determination. *Id.* Plaintiff requests in camera review.

(Doc. 161 at 4.)

F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as

true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied,* 507 U.S. 912 (1993).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A district court "should consider cross-motions for summary judgment separately and apply the burden of production to each motion."[5] *Beenick v. LeFebvre*, 684 F. App'x 200, 205 (3d Cir. 2017) (not precedential) (citing *Lawrence*, 527 F.3d at 310).  "If upon review of cross motions for summary judgment [the court] find[s] no genuine dispute over material facts, then [the court] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citing *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 145–46 (3d Cir. 1998)).

---

[5] *Beenick* further explains,

> [the plaintiff] argues that the District Court failed to apply the correct standard on cross-motions for summary judgment because it did not fully consider his motion for partial summary judgment. Beenick is correct that a District Court should consider cross-motions for summary judgment separately and apply the appropriate burden of production to each motion. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). The District Court did not violate this rule because it did not consider the cross-motions simultaneously. Rather, it addressed Defendants' motion for summary judgment first. By proceeding with Defendants' motion first, the District Court viewed the evidence in the light most favorable to Beenick and concluded that Defendants were entitled to summary judgment on all of his claims. That conclusion ended the case and mooted any need to consider Beenick's cross-motion for partial summary judgment.

*Beenick v. LeFebvre*, 684 F. App'x 200, 205–06 (3d Cir. 2017).

### B.  FOIA

As the Third Circuit explained in *Davin*, FOIA was enacted "to facilitate public access to Government documents" and "was intended to create an expedient tool for disseminating information and holding the government accountable."  60 F.3d at 1049 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 974 (3d Cir. 1981)).  FOIA requires government agencies to "make promptly available any records requested" unless the requested information falls under one of nine exemptions.  *Id.* (citing 5 U.S.C. § 552(b)).  FOIA "creates a strong presumption in favor of disclosure."  *Id.* (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

In reviewing a summary judgment motion under FOIA, "a district court must perform a *de novo* review of a government agency's decision to withhold information" pursuant to FOIA exemptions.  *See W. Star Hosp. Auth. Inc. v. U.S. Dep't of Veterans Affs.*, No. 2:18CV1011, 2021 WL 9595459, at *2 (W.D. Pa. Feb. 12, 2021) (citing *Davin*, 60 F.3d at 1049).  **"**Because the opposing party (generally the requester) does not ordinarily have the factual information upon which the moving party (generally the agency) has relied, summary judgment in an FOIA case 'takes on a unique configuration.'"  *McDonnell v. United States*, 4 F.3d 1227, 1241–42 (3d Cir. 1993).

The Government bears the burden of showing that a statutory exemption applies.  *Davin*, 60 F.3d at 1049.  The Government is entitled to summary judgment if its affidavits "describe the withheld information and the justification for withholding with reasonable

specificity, demonstrating a logical connection between the information and the claimed

exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith." *Id.* at 1050. (quoting *American Friends Serv. Comm. v. Dep't*

*of Defense*, 831 F.2d 441, 444 (3d Cir. 1987) (citations and internal quotation marks

omitted)).

Finally, district courts may, in their discretion, examine *in camera* the contents of

agency records that have been withheld. *Berger v. I.R.S.*, 288 F. App'x 829, 834 (3d Cir.

2008) (first citing 5 U.S.C. § 552(a)(4)(B); and then citing *Hinton v. Dep't of Just.,* 844 F.2d

126, 128 (3d Cir. 1988)). Such review "should not be resorted to 'routinely' and is

unnecessary if agency affidavits or other showings are specific." *Id.* (quoting *Ferri v. Bell,*

645 F.2d 1213, 1225–26 (3d Cir. 1981)).

## IV. ANALYSIS

The Court's analysis is limited to the grounds for objection asserted by Biear—that

certain of the documents contain overinclusive redactions, or were redacted or withheld in

full despite containing reasonably segregable information not subject to exemption—and

further narrowed by the parties' subsequent agreement to *in camera* review. With the

benefit of access to the unredacted documents, and in light of the explanations set forth in

the latest Vaughn Index and the Hardy Declaration, the only question before the Court is

whether the relevant FOIA exemptions were properly applied.[6]

Within the 286 documents Biear has challenged, the FBI asserts five exemptions,

each of which are set forth in the statute itself: 5 U.S.C. § 552(b)(3) ("Exemption 3"), (b)(6)

("Exemption 6"), (b)(7)(C) ("Exemption 7(C)"), (b)(7)(D) ("Exemption 7(D)"), and (b)(7)(E)

("Exemption 7(E)").[7]  Where feasible, the Court addresses these exemptions categorically.

*See Lame v. U.S. Dep't of Just.*, 654 F.2d 917, 929 (3d Cir. 1981) ("Once the district court

has examined the explanations for the claimed exemptions, it may group its findings by

category if it so desires. It need not make repetitive, individual findings as to each claimed

exemption if its examination reveals grounds for either exemption or disclosure which are

common to more than one document.").

### A. Exemptions 3, 7(D), and 7(E)

First, the Court finds Exemptions 3, 7(D), and 7(E) were properly applied.  The FBI

asserted Exemption (b)(3), which covers information protected by a statute other than FOIA

itself.  It applies to information that is

> (3) specifically exempted from disclosure by statute (other than section 552b of
> this title), if that statute--

---

[6] To be clear, the Court need not determine whether the Hardy Declaration or *Vaughn* index is specific enough to inform Biear and the Court as to whether the exemptions were properly applied to the 286 documents in question absent *in camera* review, because the Court has indeed reviewed the documents *in camera*.  But both the declaration and index remain useful, because they help guide the Court's balancing of interests, for example under Exemption 7(C).

[7] None of the 286 challenged documents were redacted pursuant to Exemption (b)(7)(A).

(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  The FBI also asserted Exemption 7(D), which exempts law enforcement records that "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D).  Its scope includes "information furnished by a confidential source," including by a state, local, or foreign agency. *Id.*  Finally, the FBI asserted Exemption 7(E), which exempts "techniques and procedures for law enforcement investigations or prosecutions" and "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Having reviewed the documents in which information was withheld pursuant to Exemptions 3, 7(D), and 7(E), and to which Biear objected, the Court concludes these exemptions were properly applied in every case for the reasons set forth in the R&R (Doc. 124).  Moreover, the information withheld was not reasonably segregable from non-exempt information.  As such, the R&R will be adopted with respect to the application of these exemptions.

### B. Exemptions 6 and 7(C)

The FBI jointly asserted Exemptions 6 and 7(C) to protect against invasions of personal privacy.  The FBI's application of these exemptions was generally proper, with two categorical exceptions.

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). And Exemption 7(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). The two exemptions are frequently asserted together and require a similar analysis, though 7(C) applies more broadly.[8]

Exemptions 6 and 7(C), together "Exemption 6/7(C)", were asserted to justify the majority of the redactions at issue in this matter. The FBI asserted the exemption to protect the privacy of government agents as well as third parties who either provided information to the FBI, were "merely mentioned" in the records, were of "investigative interest," or were victims. Specifically, the FBI subcategorized its application of Exemption 6/7(C) as

---

[8] The Third Circuit compared the two in *McDonnell*:

Exemption 7(C)'s privacy language is, however, broader than the comparable language in Exemption 6 in two respects. First, although Exemption 6 requires that the invasion of privacy be "clearly unwarranted," the adverb "clearly" is omitted from Exemption 7(C). Second, Exemption 6 refers to disclosure that "would constitute" an invasion of privacy, while Exemption 7(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion. *Compare* 5 U.S.C.A. § 552(b)(6) *with id.* § 552(b)(7)(C); *see Reporters Comm.*, 489 U.S. at 756, 109 S.Ct. at 1473; *see also Keys v. United States Dept. of Justice*, 830 F.2d 337, 346 (D.C.Cir.1987) (government need only demonstrate reasonable expectation of invasion of personal privacy to invoke Exemption 7(C)). "Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files." *Reporters Comm.*, 489 U.S. at 756, 109 S.Ct. at 1473.

*McDonnell*, 4 F.3d at 1254.

protecting the names and identifying information of (1) FBI special agents and support

personnel; (2) third parties who provided information to the FBI; (3) third party victims; (4)

non-FBI federal government personnel; (5) third parties merely mentioned; (6) local law

enforcement personnel; (7) third parties of investigative interest to the FBI and/or other law

enforcement agencies; and (8) commercial institution personnel.  (*See* Doc. 154-1 at 15–

22.)

The Court starts with Exemption 7(C) as it applies more logically to the records at

hand, and because, as the broader of the two, proper redaction under Exemption 7(C)

renders evaluation under Exemption 6 unnecessary.

Biear does not challenge that the records at issue were compiled for law

enforcement purposes, so the first requirement of 7(C) is satisfied.  To determine whether

the second requirement is met, *i.e.*, whether the information contained within them "could

reasonably be expected to constitute an unwarranted invasion of personal privacy" if

produced, requires the Court to balance the asserted privacy interest against the interest of

the public.  *See Davin*, 60 F.3d at 1058 (describing application of 7(C) as "a de novo

balancing test, weighing the privacy interest and the extent to which it is invaded on the one

hand, against the public benefit that would result from disclosure, on the other").

"FOIA recognizes an individual's privacy interest in avoiding disclosure of personal

matters and in 'making certain kinds of important decisions.'"  *O'Brien v. Dep't of Just.*, No.

CV 20-0092, 2022 WL 2651850, at *5 (E.D. Pa. July 8, 2022) (quoting *U.S. Dep't of Just. v.*

*Reps. Comm. For Freedom of Press*, 489 U.S. 749, 762 (1989)), *aff'd sub nom. O'Brien v. U.S. Dep't of Just.*, No. 22-2335, 2023 WL 2770824 (3d Cir. Apr. 4, 2023).  As the FBI contends, this includes an interest in avoiding disclosure of the fact of involvement with a criminal investigation, whether as a subject, victim, witness, informant, or other third party. *See id.* (quoting *Bartko v. DOJ*, 898 F.3d 51, 71 (D.C. Cir. 2018)); *see also Lazar v. Fed. Bureau of Investigation*, 207 F. Supp. 3d 557, 564–65 (E.D. Pa. 2016) (individuals have a "privacy interest in not having their names revealed in connection with disclosure of the fact and subject matter of the investigation").  The Third Circuit has explained,

> Suspects of the investigation have the most obvious privacy interest in not having their identities . . . revealed. However, disclosure of the names of interviewees and witnesses may result in embarrassment and harassment to them as well. Criminal investigations turn up a myriad of details about the personal lives of witnesses and interviewees and for some, disclosure of the fact of cooperation with the investigation may itself result in reprisals or strained personal relationships. Moreover . . . many people may have reason to seek out and question those who have supplied information in the course of a criminal investigation.

*Landano v. U.S. Dep't of Just.*, 956 F.2d 422, 426 (3d Cir. 1992) (citations omitted), *vacated in part on other grounds and remanded,* 508 U.S. 165 (1993); *see also Baez v. F.B.I.*, 443 F. Supp. 2d 717, 724 (E.D. Pa. 2006).  FOIA thus permits the FBI "to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'"  *O'Brien,* 2022 WL 2651850, at *5 (citing *Bartko*, 898 F.3d at 71).  This privacy interest extends to law enforcement personnel, who "also have a significant interest

in keeping their identities secret." *Baez,* 443 F. Supp. 2d at 725 (citing *Landano*, 956 F.2d at 426–27).

On the other hand, the only relevant *public* interest for purposes of 7(C) is that on which FOIA is premised: "the citizens' right to be informed about 'what their government is up to.'" *Reps. Comm.*, 489 U.S. at 773. As the FBI notes, the public side of the balancing test is therefore limited to "shed[ding] light on an agency's performance of its statutory duties." (Doc. 96 at 21 (citing *Reps. Comm.*, 489 U.S. at 773).) The Supreme Court has cautioned that FOIA's statutory purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reps. Comm.*, 489 U.S. at 773.

Finally, courts have held Exemption 7(C) applies not only to names and addresses, but also to other information that could reasonably identify an individual. *See, e.g., Prop. of the People, Inc. v. Dep't of Just.*, 539 F. Supp. 3d 16, 26 (D.D.C. 2021) (citing *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)) ("The exemption protects not only actual identities, but also other information that may reveal the identity of an individual without naming him explicitly."); *Smith v. Flaherty*, 465 F. Supp. 815, 823 (M.D. Pa. 1978) (Exemption 7(C) "has been interpreted as not only covering the names of persons interviewed by the F.B.I. in the course of a criminal investigation but also any statements or facts that might reasonably lead to the ascertainment of the person's identity."). Indeed, to hold otherwise could render the exemption useless; if 7(C) serves to protect "interviewees

15

and witnesses" from "embarrassment and harassment," *Landano*, 956 F.2d at 426, then it is properly applied to any information that could reasonably be expected to identify that individual to his or her potential harasser.

Having reviewed the documents in which information was withheld pursuant to Exemption 7(C) and to which Biear objected, the Court finds that, with two categorical exceptions, the FBI properly balanced the relevant public and private interests.

### 1. Proper Redactions Under Exemption 6/7(C)

First, the Court addresses the application of Exemption 7(C) in all cases except those two exceptions set forth below. The FBI frequently applied the exemption to witness statements and interview notes containing personal details, some of which directly identify individuals (*e.g.,* by way of names and contact information) and others of which are reasonably traceable to specific witnesses, interviewees, or other third parties. Accordingly, the documents reflect redactions of information other than names and contact information, but properly so, because the matter withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy" if it were released. 5 U.S.C. § 552(b)(7)(C). The privacy interests of these third parties, whether law enforcement agents, sources, or individuals of investigative interest, are therefore significant.

When balanced against the only relevant public interest, the privacy interests prevail. The records at issue shed little light on the FBI's "performance of its statutory duties." *Reps. Comm.*, 489 U.S. at 773. And Biear has not proposed a narrower lens through which the

Court should consider the public interest; for example, he has not alleged impropriety on behalf of the FBI, nor does the Court see any evidence of such in the documents. *See, e.g., Levy v. U.S. Postal Serv.*, 567 F. Supp. 2d 162, 168 (D.D.C. 2008) (citing *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1205 (D.C. Cir. 1991)) (holding that Exemption 7(C) applies to witness statements when plaintiff did not "claim to seek these materials for the purpose of obtaining more information about the agency's own conduct" nor make any "allegations of agency impropriety that would weigh in favor of disclosure"); *see also O'Brien,* 2022 WL 2651850, at *5. Instead, the overwhelming majority of the redacted information consists of summaries of laypersons' accounts of details relevant to a particular criminal investigation. The Court is not persuaded that such information would apprise the public as to "what their government is up to." *Id.*

Finally, the matter withheld was not reasonably segregable from information not covered by the exemption. The application of Exemption 7(C) was therefore generally proper.

### 2. Improper Redactions Under Exemption 6/7(C)

Two categories of information were improperly exempted. First, Exemption 7(C) was applied too broadly to two FBI Electronic Communications/FD-1057s ("ECs"). These ECs regarded the FBI's intent to interview certain witnesses and listed questions to be posed to the witnesses. While identifying information of third parties contained within those questions must remain redacted, the questions as a whole must not. Through these two documents,

17

unlike most exempted under 7(C), the public stands to gain some understanding of what the

FBI is up to, and therefore the extent of the redactions must be reduced in favor of the

public interest.  *See Davin*, 60 F.3d at 1058.  The following documents must be unredacted

as described:[9]

1. *Biear-382.*  After the text "but not be limited to, the following:", the remainder of the document must be unredacted with the exception of names of individuals *other than* Biear, which must remain redacted.
2. *Biear-385.*  After the text "but not be limited to, the following:", the remainder of the document must be unredacted with the exception of names of individuals *other than* Biear, which must remain redacted.

Second, Exemption 7(C) was not properly asserted on behalf of individuals who are

deceased, because "[p]ersons who are deceased have no privacy interest in nondisclosure

of their identities." *McDonnell*, 4 F.3d at 1257; *see also Davin*, 60 F.3d at 1059 (reaffirming

that deceased individuals have no privacy interests for purposes of Exemptions 6 and 7(C));

*Frankenberry v. F.B.I.*, 567 F. App'x 120, 122 (3d Cir. 2014).  In the underlying criminal case

to which many (if not all) of the documents at issue relate, there is only one third party victim

known to the Court: Kenward Elmslie.  Elmslie was living during the course of the criminal

investigation but is now deceased.[10]  Each assertion of the FBI's Exemption 6/7(C)-3, the

---

[9] Throughout this opinion, any references to individuals' names do not include names of artists used solely to describe works of art.

In addition, wherever individuals' names must be redacted, corresponding pronouns must also be redacted.

[10] Elmslie died on June 29, 2022.  *See* Neil Genzlinger, *Kenward Elmslie, Poet and Librettist, Dies at 93,* The New York Times (July 8, 2022), https://www.nytimes.com/2022/07/08/arts/music/kenward-elmslie-dead.html.  His death occurred after the FBI records were initially redacted and produced to Biear, but before the 286 records at issue were submitted to the Court for *in camera* review on July 15, 2022. (Doc. 162.)

subcategory protecting third party victims, is therefore unjustified, because each purports to

protect Elmslie's privacy.  Another individual mentioned less frequently, Joe Brainard, died

in 1994.[11]  As such, the FBI's assertion of Exemption 6/7(C)-5, protecting third parties

merely mentioned, is unjustified as applied to Brainard.

Consequently, interviews, statements, and writings of these now-deceased

individuals are no longer exempt under 6/7(C), except to the extent they discuss *other*

individuals whose privacy rights are subject to invasion.[12]  The following documents

detailing interviews or statements of Elmslie's must be unredacted as described:

_____

The Court held a telephone conference with the parties on July 10, 2023, to discuss their positions on this issue.  Upon learning of Elmslie's death, the parties concurred in the Court's assessment of the legal ramifications.

Following the conference, counsel for the FBI filed a letter stating that "the FBI would need to review the specific documents prior to lifting the (b)(6) and (b)(7)(C) exemptions wherein third-party victim's name is redacted to ensure that the privacy interests of other individuals is [sic] not implicated with the release of the third-party victim's name."  (Doc. 167 at 2.)  Because Elmslie's death preceded the FBI's submission of documents for *in camera* review, and because the government bears the burden of justifying its application of any exemptions, the FBI is not entitled to revisit its redactions on behalf of other individuals at this time.

The FBI's concern for the privacy of other individuals is nonetheless valid.  As set forth *infra*, the Court gave careful consideration to those interests in each instance where Elmslie's name and information must be unredacted, and in many cases, his name and information must remain redacted because their disclosure would invade the privacy of another individual.  The FBI's concern is therefore fully addressed herein, and no further review by the FBI is warranted.

[11] Roberta Smith, *Joe Brainard, Artist, Theater Set Designer And Poet, Dies at 52,* The New York Times (May 27, 1994), https://www.nytimes.com/1994/05/27/obituaries/joe-brainard-artist-theater-set-designer-and-poet-dies-at-52.html.

[12] In most cases, if another individual's privacy was at issue, the FBI asserted another subcategory of Exemption 6/7(C).  For example, a line about Elmslie might have been redacted on the basis of 6/7(C)-3, for third party victims, but also on the basis of 6/7(C)-2, to protect third parties who provided information, because the third party's knowledge of or relationship with Elmslie would disclose the third party's identity.  In some cases, a reference to Elmslie may have also been covered by another exemption altogether.  To the extent the Court determines another subcategory of 6/7(C) or another exemption applies, the redaction must remain.

1. *Biear-3*.  The document must be produced and unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted.

2. *Biear-14, Biear-15, Biear-16*.  The document must be produced and unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted.

3. *Biear-41, Biear-42*.  The document must be produced and unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted.

4. *Biear-46*.  All redactions made on the basis of Exemption 6/7(C)-3 must be unredacted.

5. *Biear-63, Biear-64*.  The document must be produced and unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted.  In addition, the second paragraph of Biear-63 must remain redacted.

6. *Biear-784*.  The document must be produced and unredacted, except that the FBI Special Agent's name must remain redacted.

7. *Biear-826, Biear-827*.  The documents must be produced and unredacted with the exception of names of individuals *other than* Elmslie, Biear, and Brainard, as well as phone numbers of individuals *other than* Elmslie, Biear, and Brainard, which must remain redacted.  In Biear-827, the last six paragraphs must also remain redacted.

8. *Biear-861*.  The first redaction must be unredacted.  The last sentence within the third redaction must be unredacted.  All other redactions must remain.

9. *Biear-1016*.  The document must be unredacted with the exception of names and initials of individuals *other than* Elmslie, Biear, and Brainard, which must remain redacted.

10. *Biear-1035, Biear-1036, Biear-1037, Biear-1038*.  If these notes were written by Elmslie, the documents must be unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted.  If these notes were not written by Elmslie, the document must be withheld in full.

11. *Biear-1039*.  The document must be unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted.  In addition, bank account numbers and social security numbers must remain redacted.[13]

12. *Biear-1040*.  If these notes were written by Elmslie, the document must be unredacted with the exception of names of individuals *other than* Elmslie and Biear,

---

[13] While recognizing that Elmslie has no privacy interest under FOIA, this sensitive information will remain redacted in an abundance of caution as the Court is unaware of the status of his estate.

as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted. If these notes were not written by Elmslie, the document must be withheld in full.

13. *Biear-1047, Biear-1048.* If these notes were written by Elmslie, the document must be unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted. If these notes were not written by Elmslie, the document must be withheld in full.

14. *Biear-1049.* The document must be unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted. In addition, bank account numbers must remain redacted.

15. *Biear-1050.* If these notes were written by Elmslie, the document must be unredacted with the exception of names of individuals *other than* Elmslie and Biear, as well as phone numbers of individuals *other than* Elmslie and Biear, which must remain redacted. If these notes were not written by Elmslie, the document must be withheld in full.

Further, references to Elmslie and Brainard contained in statements made by other individuals are not exempted under 6/7(C), except to the extent those references would "reasonably be expected to constitute an unwarranted invasion" of another individual's privacy. 5 U.S.C. § 552(b)(7)(C). Any Elmslie or Brainard references that would identify another individual—or in other words, references that the Court deems exempt under another subcategory of Exemption 6/7(C)—must remain redacted. References that are covered by another exemption altogether will also remain redacted.

References that are not covered by another subcategory or other exemption must be unredacted, as follows:

1. *Biear-5, Biear-6.* In Biear-5, the following must be unredacted:
   a. Paragraph 2, line 2: "Kenward Elmslie. Elmslie".
   b. Paragraph 2, lines 3 and 4: "Elmslie" through "rehearsals."
   c. Paragraph 4, line 2: "Elmslie".

      d.  Paragraph 5, line 2: "Elmslie's".

      e.  Paragraph 7, lines 1 and 2: "Elmslie" through "2005."

    In Biear-6, the following must be unredacted:

      f.  First full paragraph, line 1: "Elmslie".

      g.  Second full paragraph, line 1: "Elmslie" through "New York."

      h.  Second full paragraph, lines 2 and 3: "Elmslie" through "Denmark."

      i.  Second to last paragraph: must be unredacted in full.

2.  *Biear-19.*  "Elmslie's money" in the second-to-last paragraph must be unredacted. The last line of the last paragraph must also be unredacted, from "Elmslie's" to "Elmslie."

3.  *Biear-23.*

      a.  Paragraph 1 must be unredacted with the exception of the text between "Elmslie" and "revealed" on lines 4 and 5, which must remain redacted.

      b.  Paragraph 4 must be unredacted.

      c.  Paragraph 5, line 1: "from Elmslie" must be unredacted.

4.  *Biear-65.*  The following must be unredacted:

      a.  Paragraph 2, line 4: "Kenward Elmslie."

      b.  Paragraph 4, line 2: "Elmslie."

5.  *Biear-70.*  The following must be unredacted:

      a.  Paragraph 5: "Elmslie."

      b.  Paragraphs 6 and 7, in full.

      c.  Paragraph 9: "Elmslie."

6.  *Biear-79.*  The following must be unredacted:

      a.  The second-to-last paragraph, in full.

      b.  The first two sentences in the last paragraph.

7.  *Biear-222.*  From the top of the document, the second, fifth, and eighth redactions must be unredacted.

8.  *Biear-228.*  The second redaction must be unredacted.

9.  *Biear-373.*  The following must be unredacted:

      a.  Under "Title", "Kenward Elmslie".

      b.  Under "Details", the last two lines of the first paragraph.

      c.  Under "Details", the second paragraph, in full.

10.  *Biear-374, Biear-375, Biear-376.*  In Biear-374, the following must be unredacted:

      a.  Under "Title", "Kenward Elmslie".

      b.  Under "Details", in line 5 of the first paragraph, "from Elmslie's residence".

      c.  Under "Details", the last two lines of the first paragraph.

      d.  Under "Details", all of the second paragraph.

    In Biear-375, the following must be unredacted:

      e.  Paragraph 1, line 3: "of Elmslie".

      f.  Paragraph 1, lines 3 and 4: "The interview" through "2007."

    g. All of Paragraph 2.

    h. Paragraph 3, last line: "of Elmslie."

   In Biear-376, the following must be unredacted:

    i. Paragraph 1, lines 4 and 5: "assist" through "05648."

    j. Paragraph 1, last line: "of Elmslie".

11. *Biear-377*. In the "Synopsis" section under "Summary", "Kenward" through "fortune" must be unredacted.

12. *Biear-390*. Under "Title", "Kenward Elmslie" must be unredacted.

13. *Biear-410*. In line 2 of the last paragraph, "Elmslie" must be unredacted twice.

14. *Biear-506*. The first paragraph must be unredacted in full.

15. *Biear-571, Biear-572*. In Biear-571, the last three lines on the page must be unredacted. In Biear-572, the third redaction from the bottom of the page must be unredacted, from "There" to "follows:".

16. *Biear-581*. In paragraph 2, line 1, "had advised Kenward Elmslie to" must be unredacted. In paragraph 5, line 2, "the Elmslie" must be unredacted.

17. *Biear-589*. Paragraph 4 must be unredacted in full.

18. *Biear-598*. In line 1 of the second full paragraph, "Elmslie's mental state" must be unredacted.

19. *Biear-613*. Under "Title", "Kenward Elmslie" must be unredacted.

20. *Biear-701*. Paragraph 2, line 2 must be unredacted.

21. *Biear-708*. In paragraphs 2 and 3, "Elmslie" must be unredacted.

22. *Biear-1012, Biear-1013*. In Biear-1012, the following must be unredacted:

    a. The third redaction from the top.

    b. The second redaction from the bottom.

   In Biear-1013, the last redaction must be unredacted.

23. *Biear-1043, Biear-1044, Biear-1045, Biear-1046*. The document must be produced and unredacted in full.

   With respect to the aforementioned specific exemptions within the listed documents,

the R&R will not be adopted and summary judgment will be granted to Biear. With respect

to all other assertions of Exemption 6/7(C), the R&R will be adopted and summary judgment

will be granted to the FBI.

## V. CONCLUSION

For the aforementioned reasons, the R&R (Doc. 124) will be adopted as modified. Biear's motion for summary judgment (Doc. 102) will be granted in part, and the FBI's motion to dismiss or for summary judgment (Doc. 95) will be denied in part, with respect to the specific exemptions within the listed documents as set forth *supra* at pages 18–23. With respect to all other exemptions asserted under Exemptions 3, 6, 7(C), 7(D), and 7(E), the FBI's motion to dismiss or for summary judgment (Doc. 95) will be granted and Biear's motion for summary judgment (Doc. 102) will be denied. A separate order follows.

Robert D. Mariani
United States District Judge