**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES BIEAR,                          :
                                      :
        v.                            :    3:14-CV-1488
                                      :
                                      :    **(JUDGE MARIANI)**
UNITED STATES DEPARTMENT              :
OF JUSTICE ERIC HOLDER,               :
ATTORNEY GENERAL,                     :
                                      :
            Defendant.                :

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff James Biear's correspondence to the Court filed on April 11, 2024, requests, *inter alia*, that the Court reopen this case. (Doc. 176.) The Court construes the correspondence as a motion to reopen the case. Considering Plaintiff's April 11, 2024, filing (Doc. 176) and his May 20, 2024, filing (Doc. 179), the asserted bases for reopening are Defendant's noncompliance with the Court's July 31, 2023, Memorandum Opinions and Orders (Docs. 168-171) and numerous additional loosely articulated grounds. (*See* Docs. 176, 179.) For the reasons that follow, the Court will deny the Motion.

### II. BACKGROUND

This case arises from a series of Freedom of Information Act ("FOIA") requests that Plaintiff James Biear submitted in 2012 and 2013 seeking "Any and all documents and electronic media assembled during any investigation (or review) containing the name James S. Biear (aka J. Steven Biear and James C. Biear), DOB [REDACTED], SSN:

[REDACTED]." (*E.g.,* Doc. 1-1 at 4.) He submitted these requests to several Department of Justice ("DOJ") components, including the Criminal Division and the FBI. (*See, e.g.,* Doc. 168 at 1-2, Doc. 170 at 2.)

On September 4, 2015, a Report and Recommendation ("R&R") was issued which recommended granting Defendant's pending motions to dismiss or for summary judgment (Docs. 21, 51), denying Plaintiff's cross-motion for summary judgment (Doc. 65), and closing the case. (Doc. 78 at 60-62.) By Order of November 23, 2015, the Court adopted the R&R and closed the case. (Doc. 84 at 2-4.) Plaintiff filed a timely notice of appeal (Doc. 86) and the Circuit Court reversed this Court's judgment in part and affirmed in part, *Biear v. Attorney General United States*, 905 F.3d 151, 159 (3d Cir. 2018). Specifically, the Circuit Court "reverse[d] the District Court's judgment with respect to the Criminal Division and FBI requests, affirm[ed] the judgment with respect to the other requests, and remand[ed] for further proceedings." *Id.*

Following remand, Defendant filed the Second Motion to Dismiss or in the Alternative, for Summary Judgment on Behalf of the FBI (Doc. 95) on November 28, 2018, Plaintiff filed a cross-motion for summary judgment (Doc. 102) on January 29, 2019, and Defendant filed the Second Motion to Dismiss or in the Alternative, for Summary Judgment on Behalf of the Department of Justice Criminal Division (Doc. 116) on November 25, 2019. The March 9, 2020, R&R recommended that the Second Motion to Dismiss or in the Alternative, for Summary Judgment on Behalf of the FBI (Doc. 95) be granted, Plaintiff's

2

cross-motion for summary judgment (Doc. 102) be denied, and the matter be remanded to the Magistrate Judge for further proceedings with respect to certain Criminal Division FOIA requests. (Doc. 124 at 37-38.)

On July 31, 2023, the Court granted the Criminal Division's Second Motion to Dismiss or in the Alternative, for Summary Judgment (Doc. 116) in part and denied it in part, requiring the Criminal Division to produce certain documents subject to the conditions set out in the accompanying Memorandum Opinion (Doc. 168). (Doc. 169.) Also on July 31, 2023, the Court adopted the March 9, 2020, R&R as modified, granted the FBI's Motion to Dismiss or for Summary Judgment (Doc. 95) in part and denied it in part and granted Plaintiff's Motion for Summary Judgment (Doc. 102) in part and denied it in part. (Doc. 171 ¶¶ 1-3.) The FBI's Motion was denied as to specific exemptions in certain documents, resulting in the Court ordering the FBI to produce documents identified in the accompanying Memorandum Opinion (Doc. 170) with redactions removed or altered as set out in the Memorandum Opinion. (*Id.* ¶ 2(a).) Plaintiff's Motion was granted as to the documents the Court required the FBI to produce and denied in all other respects. (*Id.* ¶ 3.) The Court also closed the case on July 31, 2023. (Doc. 172.)

Plaintiff appealed the Court's Order granting in part the FBI's Motion to Dismiss or for Summary Judgment and the Circuit Court affirmed. *Biear v. Attorney General United States*, No. 23-2557, 2024 WL 837039 (3d Cir. Feb. 24, 2024). In so doing, the Circuit Court recognized Plaintiff's contention the "District Court 'did not elect to follow up on the

3

government lawyers['] supplemental production, which remains outstanding . . . .'" *Id.* at *2 (quoting Appellant's Br., 1). The Court noted that, if the required documents had not been provided, Plaintiff's "remedy is to ask the District Court to enforce its order." *Id.* (citing *Butt v. United Bhd. of Carpenters & Joiners of Am.*, 999 F.3d 882, 886-87 (3d Cir. 2021) (discussing ancillary enforcement jurisdiction)).

Plaintiff's correspondence to the Court dated March 28, 2024, and filed on April 11, 2023, ("Motion") includes the assertion that he had not received the required FBI documents as well as a request for the Court to review the ten documents he received from the Criminal Division to see if the release completes the Criminal Division's FOIA obligation and is in compliance with the Court's Order. (Doc. 176 at 1.) Plaintiff requests that the Court reopen the case to make the compliance determination, join another matter into the above-captioned action, and review all records. (*Id.*)

On May 9, 2024, the Criminal Division and FBI filed a response to the Motion with supporting declarations. (Docs. 178, 178-2, 178-4.) Both the Criminal Division and FBI maintain that they have satisfied the Court's Orders and this case should remain closed. (Doc. 178 at 3, 4.)

The Criminal Division specifically states that it complied with the Court's order by producing *Vaughn* index Documents 1, 43, 53, 71-75, 81, and 83 (with the allowed necessary redactions to protect third-party information) and mailed the release to Plaintiff on

March 19, 2024.[1] (Doc. 178 at 2-3.) The Criminal Division notes that Plaintiff's letter verifies receipt of the release. (*Id.* at 3 (citing Doc. 176 at 1).)

The FBI states that it mailed a release of the reprocessed records ordered to be produced pursuant to the Court's July 31, 2023, Order (Doc. 171) on March 1, 2024, and the package was marked as "Delivered" in the FedEx proof of delivery. (Doc. 178 at 4.) The FBI also states that it again mailed the package on or around April 3, 2024, to a different address provided by Plaintiff and this package was also marked as "Delivered" on the FedEx proof of delivery. (*Id.*)

In his correspondence to the Court dated May 15, 2024, and filed on May 20, 2024, ("reply brief") Plaintiff reiterates his request to reopen the case, states that he disagrees with the Criminal Division's response, and requests that the Court conduct an *in camera* review of the documents released. (Doc. 179 ¶¶ 3, 7.) Plaintiff's reply brief includes the following additional statements/requests: 1) Plaintiff seeks an investigation of the FBI's statement concerning the March 1, 2024, mailing of documents and, following the investigation, seeks a review for sanctions and/or disciplinary action (*id.* ¶¶ 4-5); 2) Plaintiff raises issues related to the FBI documents which he received on April 4, 2024 (*id.* ¶ 6); 3) Plaintiff expresses his

---

[1] "A *Vaughn* index is a procedural tool developed in *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C.Cir.1973), . . . to enable a district court to evaluate allegations of exemption advanced by a governmental agency, and to assure that claimed exemptions are justified under the Act." *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 972 (3d Cir. 1981).

belief that Defendant has repeatedly violated the FOIA and continues to do so (*id.* ¶ 8); and

4) Plaintiff seeks guidance on addressing his claims regarding a fair trial (*id.* ¶ 9).

## III. ANALYSIS

## A. Noncompliance with Court Orders

### 1. FBI Documents

When Plaintiff filed this Motion, he stated that he had not received the FBI

documents identified in the Court's July 31, 2023, Memorandum Opinion and Order (Docs.

170, 171). (Doc. 176 at 1.) In his reply brief, Plaintiff acknowledges that he received the FBI

documents on April 4, 2024. (Doc. 179 ¶ 6.) Therefore, Biear's receipt of the FBI documents

is not at issue.

Regarding the documents received from the FBI, Plaintiff states that he "found

Elmslie's name still masked on documents [and] also found other documents that are now

presented with continued masked portions."[2] (*Id.*) Plaintiff maintains that these documents

> are documents/evidence that is favorable to the defendant [exculpatory] in a
> criminal case that originated in New York and was transferred to New Jersey
> [Docket No. 2:20CR00246-001]. Exculpatory evidence which includes but are
> not limited to favorable statements from the "victim," favorable statements from
> a witness whose name was masked, the knowledge of "two people charged,"
> as well as a bank that was declared as having an issue of culpability.

(Doc. 179 ¶ 6.)

---

[2] In the underlying criminal case to which many (if not all) of the documents at issue relate,
Kenward Elmslie was a third-party victim who was living during the course of the criminal investigation but
died on June 29, 2022. (*See* Doc. 170 at 18 & n.10.) Joe Brainard was another individual mentioned in
documents who was deceased. (*Id.* at 19 & n.11.)

The Court assesses Plaintiff's assertions concerning the FBI documents in the

context of findings and directives set out in the Court's July 31, 2023, Memorandum Opinion

addressing FOIA Exemptions 6 and 7(c).[3] (*See* Doc. 170 at 17-23.) Having found that two

individuals whose names had been redacted from FBI documents were deceased, Kenward

Elmslie and Joe Brainard, *see supra* n.2, the Court determined that "interviews, statements,

and writings of . . . now-deceased individuals are no longer exempt under 6/7(C), except to

the extent they discuss *other* individuals whose privacy rights are subject to invasion." (Doc.

170 at 19.) Consideration of redactions related to Elmslie were governed by this

determination, and the Court specifically identified unredactions preliminarily found

appropriate.[4] (*Id.* at 19-23.) Therefore, continued redaction of Elmslie's name is not

prohibited in all instances. Similarly, if documents have "continued masked portions," they

are noncompliant only if the document is not unredacted as specifically directed by the

Court in the July 31, 2023, Memorandum Opinion (Doc. 170 at 18, 20-23) which was issued

---

[3] The full analysis of FOIA exemptions and their application to FBI documents at issue is set out in the Memorandum Opinion (Doc. 170 at 10-23) and need not be repeated here.

[4] The July 31, Memorandum Opinion explained that

references to Elmslie and Brainard contained in statements made by other individuals are not exempted under 6/7(C), except to the extent those references would "reasonably be expected to constitute an unwarranted invasion" of another individual's privacy. 5 U.S.C. § 552(b)(7)(C). Any Elmslie or Brainard references that would identify another individual—or in other words, references that the Court deems exempt under another subcategory of Exemption 6/7(C)—must remain redacted. References that are covered by another exemption altogether will also remain redacted.

(Doc. 170 at 21.) The Court then specifically identified "[r]eferences that are not covered by another subcategory or other exemption [that] must be unredacted. *Id.*

following the Court's *in camera* review conducted pursuant to a procedure agreed upon by the parties (*see id.* at 4-5). Plaintiff points to no such instance of noncompliance. Thus, Plaintiff has not shown that the FBI did not comply with the Court's July 31, 2023, Order (Doc. 171).

Plaintiff's further contention in paragraph 6 of his reply brief about the favorability of redacted documents to his criminal case, District of New Jersey docket number 2:20-CR-00246-SDW-1, does not change the foregoing analysis. Docket number 2:20-CR-00246-SDW-1 was assigned to the case when the case, which was originally docketed in the Southern District of New York at 1:09-CR-01185-PKC-1, was transferred into the District of New Jersey on March 2, 2020. (*See* D.N.J. Crim. No. 2:20-CR-00246-SDW-1, Doc. 1, Transfer of Jurisdiction; S.D.N.Y. Crim. No. 1:09-CR-01185-PKC-1, Doc. 170.) At the time of transfer, Biear had been on supervised release since August 8, 2019, and had approximately two years of his term of supervised release remaining. (*See, e.g.*, Crim. No. 2:20-CR-00246-SDW-1, Doc. 5 at 2.)[5]

---

[5] A review of the New Jersey docket does not indicate that Biear remains on supervised release (*see* Doc. 29, Probation Officer's May 19, 2022, recommendation that supervision be allowed to expire as scheduled on August 8, 2022) or that any matter is under consideration by the New Jersey District Court. The last docket entry in the New Jersey case is a copy of Biear's May 20, 2024, letter to the undersigned (herein "reply brief"), the last paragraph of which states that "[a] courtesy copy of this letter is being sent to the Susan D. Wigenton, USDJ, so this letter may also be construed as a motion on how best to address the defendant's 'failure to follow' the right to a fair trial." (D.N.J. Crim. No. 2:20-CR-00246-SDW-1, Doc. 32 ¶ 9; M.D. Pa. Civ. A. No. 3:14-CV-1488, Doc. 179 ¶ 9.)

8

A review of the New York docket shows that Kenward Elmslie was a victim of the

conduct charged in the Superseding Indictment (Doc. 14) filed on March 9, 2010, in the

Southern District of New York and that Biear was convicted of all counts on November 22,

2010. (See, e.g., Crim. No. 1:09-CR-01185-PKC, Doc. 75, Memorandum and Order denying

Biear's post-trial motions.[6]) Thus, Biear's FOIA requests submitted in 2012 and 2013 would

---

[6] The Memorandum and Order provides the following summary:

The Indictment charged the defendant with crimes stemming from a scheme, undertaken from approximately May 2005 through September 2007, to defraud Kenward Elmslie, for whom the defendant worked as a driver and personal assistant, of his artwork, money and other valuable property. The Indictment further charges that the defendant then profited by defrauding other victims with the proceeds of the crimes committed against Mr. Elmslie. Specifically, Count One of the Indictment charged defendant with interstate transportation of stolen property in connection with the unauthorized transfer of $3.2 million from the Australian bank account of victim, Elmslie, to the victim's account in Vermont and then to the defendant's account in California. Count Two charged the defendant with wire fraud in connection with the fraudulent sale of a silk-screened Heinz Tomato Ketchup box by the artist Andy Warhol and the attempted sale of a drawing by the artist Francis Picabia and a playing card known as "L.H.O.O.Q" or "Mona Lisa" by the artist Marcel Duchamp. Count Three charged the defendant with bank fraud in connection with a forged check drawn from Mr. Elmslie's Vermont bank account and subsequently deposited in defendant's bank account. Count Four charged the defendant with mail fraud in connection with defendant's submission of a fraudulent insurance claim to State Farm Insurance Company for a painting "Dutch Coaster in a Stiff Breeze," which the defendant had purchased with funds that had been fraudulently obtained. Count Five charged the defendant with access device fraud in connection with defendant's unauthorized use of Mr. Elmslie's credit cards. Counts Six through Ten charged the defendant with illegal monetary transactions in connection with the defendant's purchases with the proceeds of the $3.2 million charged in Count One, including the purchase of the painting "Dutch Coaster in a Stiff Breeze."

The trial commenced on November 8, 2010. The evidence offered by the Government at trial consisted of the testimony of twenty-five witnesses, including a special agent of the FBI, who testified about documents seized in defendant's attic, officers of the Westchester County Police Department and the Ossining Police Department, who testified about the recovery of the victim's artwork and other valuables from defendant's home and the home of defendant's sister, the defendant's accountants, the victim's accountant, the defendant's investment brokers, the victim's banker and investment advisor, persons familiar with the victim's artwork and his practices for loaning artwork, the victim's physician, the victim's other personal assistant, the defendant's art dealer and the art collector who

have been applicable to investigations related to case number 1:09-CR-01185-PKC.
Because review of the District of New Jersey and Southern District of New York dockets
shows that the District of New Jersey case is a continuation of the Southern District of New
York case transferred for the monitoring of supervised release, *see supra*, Biear's current
reference to exculpatory evidence related to District of New Jersey docket number 2:20-CR-
00246-001 is a reference to documents which are encompassed in requests that were the
subject of Biear's FOIA action in this Court. Accordingly, the release and redaction of these
documents has been addressed during proceedings in this case. Thus, Biear's conclusory
assertions regarding redacted FBI documents as they relate to District of New Jersey case
number 2:20-CR-00246-001 set out in paragraph 6 of his reply brief do not give rise to any
issue that has not previously been the subject of this Court's consideration. For this reason,
Plaintiff's assertions regarding allegedly exculpatory evidence warrant no further
consideration and provide no basis to reopen this case.

---

purchased the Warhol Heinz Box from defendant. The victim, a poet and the heir to the
Pulitzer fortune, suffers from Alzheimer's disease and did not testify at trial. The Government
also offered certain physical evidence, including numerous pieces ofthe victim's artwork and
other valuables, all of which were found in the defendant's possession, bank records and
receipts, tax records of the defendant, emails between the defendant and various witnesses,
and a tape recorded interview between defendant and the State Farm insurance investigator
concerning the "Dutch Coaster in a Stiff Breeze" painting. The jury returned a verdict of guilty
on all ten counts on November 22, 2010.

(Doc. 77 at 3-4, Memorandum and Order denying Biear's motion for judgment of acquittal under Rule 29
and a new trial under Rule 33.)

## *2. Criminal Division Documents*

Plaintiff states that he "disagrees" with the Criminal Division's response. (Doc. 179 ¶ 3.) However, he provides no specific grounds for his disagreement. (*See id.*) Cross-checking the Criminal Division release (Doc. 176-1 at 2-12) with the *Vaughn* Index (Doc. 121-1), Plaintiff received the Documents required, i.e., Documents 1, 43, 53, 71-75, 81, and 83. (*See* Doc. 168 at 22, 29, Doc. 169 ¶¶ 2.) The Court's Memorandum Opinion and Order allowed for necessary redaction of these documents. (*Id.*) Review of the documents released (Doc. 176-1 at 2-12) shows that the first of the ten released documents is simply a "Notice of Closed Files" with only a signature redacted. (Doc. 176-1 at 3.) The remaining nine documents are "AUTO NOTIFY" emails merely identifying MLA cases which have a "Next Action" due on the day the email was sent. (Doc. 176 at 4-12.) The name of the email recipient is redacted and the only cases identified are those related to Biear. (*Id.*) This review and the Declaration of Christina Butler explaining the Criminal Division's document reprocessing procedure (Doc. 178-2 ¶ 10) support a conclusion that the redactions in the Criminal Division documents were appropriate.[7]

---

[7] Ms. Butler stated that

[t]he The Criminal Division conducted a line-by-line review of the reprocessed documents and released all reasonably segregable, non-exempt inforrnation contained within them. The Criminat Division continuesl to protect third party information, including the names and identifuing information of government employees, and names and personal information of other targets and/or subjects pursuant to Exemptions 6 and 7(C). *See* ECF No. 121-1.

(Doc. 178-2 ¶ 10.)

In sum, the Court finds no basis to conclude that the Criminal Division or the FBI has not complied with the Court's July 31, 2023, Orders (Docs. 169, 171). Therefore, Plaintiff's request to reopen the case based on assertions related to the documents provided to him by the Criminal Division and the FBI will be denied.

## B. Additional Allegations

Plaintiff's Motion (Doc. 176) and reply brief (Doc. 179) vaguely articulate numerous assertions unrelated to compliance with the Court's July 31, 2023, Orders. The Court reviews these assertions below and concludes that they present no basis to reopen the case.

### 1. EOUSA Documents

Biear states the following in his March 28, 2024, correspondence: "As I also understand it, communications with the EOUSA took place before your most recent ruling(s), 'to consent to roll these pages into the existing action.' SEE United States Court of Appeals for the Third Circuit, Case No. 23-2557 [DE# 18]. . . . I respectfully request the EOUSA's FOIA obligation . . . be joined in the above-captioned matter." (Doc. 176 at 1.) For the reasons that follow, the Court will deny Biear's request.

The Court looks to Appellate Case Number 23-2557 in general and Document 18 in particular to provide context for the quoted assertions made in Biear's current Motion. On August 25, 2023, Biear appealed this Court's July 31, 2023, Memorandum Opinion and Order (Docs. 170, 171) to the extent the Court granted the FBI's Motion to Dismiss or for

12

Summary Judgment. (See Biear v. United States Department of Justice, App. No. 23-2557, Docs. 1, 9.) Appellate Document 18 referenced in Biear's Motion is his appellate reply brief. Relevant to his current reference to Document 18, Biear states that "[d]iscussions regarding records (in this case), production thereof, also remain unanswered and absent. SEE Enclosures 3 & 4." (App. No. 23-2557, Doc. 18 ¶ 9.)

Enclosure 3 is a letter to Biear dated May 5, 2022, from the U.S. Department of Justice Office of Information Policy ("OIP") concerning Biear's "attempted . . . appeal from the actions of the Executive Office for United States Attorneys (EOUSA) on [Biear's] Freedom of Information (FOIA) request for access to records . . . concern[ing] EOUSA's withholdings." (App. No. 23-2557, Doc. 18, Encl. 3 at 1.) The letter informed Biear that his appeal was being closed because he had filed suit concerning EOUSA's action in the United States District Court for the Middle District of Pennsylvania. (Id.)

Enclosure 4 is a June 2, 2022, email to Biear from Rebecca Hollander[8] with the Subject "RE; Biear – FBI claims [IWOV-SCDOCS.FID2017752]." Id. at 1. Ms. Hollander wrote:

Good morning,

I just spoke to the assistant US attorney assigned to this case. He is going to speak with EOUSA/FOIA to see if they will consent to roll these pages into the existing action.

---

[8] This Court granted Biear's motion to appoint counsel on June 1, 2021. (Doc. 141.) On June 30, 2021, Rebecca Hollander filed a Petition for Special Admission (Pro Hac Vice) which the Court approved on the same date. (Docs. 143, 144.)

He thinks there is a good chance that the documents EOUSA received from the Criminal Division were already part of the EOUSA's file and were, therefore, part of the EOUSA's original response to your FOIA request. Stated differently, he thinks these documents may be duplicative of documents that have already been addressed in this litigation. He will look into that matter as well.

He is going out on leave for a few weeks so it may take him a while to respond but he was going to reach out to EOUSA before he goes out.

Best,

Rebecca

(App. No. 23-2557, Doc. 18, Encl. 4 at 1.) Biear responded, "Thank you for the update." (*Id.*)

Assuming the foregoing documents to be the foundation for the issue now raised in Biear's request to reopen this case, the Court finds, as a threshold matter, to the extent Biear now implies in his Motion that "consent" was reached to "roll" EOUSA documents into this action, such implication is not supported by the record. His cited support, the June 2, 2022, email, at most indicates that Hollander, on Plaintiff's behalf, raised an issue with the AUSA about rolling EOUSA pages into the existing action and that the AUSA would inquire about it with the EOUSA. This is far from "consent."

Further, the issue now identified by Biear involves EOUSA documents. This is problematic for Biear because, in his appeal of the Court's November 23, 2015, adoption of the Magistrate Judge's R&R and closure of the case (Doc. 84), Biear appealed only the Court's decision regarding his FBI and Criminal Division FOIA requests, the Circuit Court specifically noting that "Biear has not claimed before us that the District Court erred with respect to the other requests," *Biear v. Attorney General of the United States*, 905 F.3d 151,

14

153 (3d Cir. 2018). The Circuit Court reversed the District Court's judgment with respect to the Criminal Division and FBI requests and affirmed "the judgement with respect to all other requests." *Id.* at 158-59. Thus, on remand, the only FOIA requests at issue were those made to the Criminal Division and the FBI—the closure of the case regarding other FOIA requests, including Plaintiff's requests to the EOUSA, was affirmed on appeal, *id.*

Finally, the record contains no suggestion of any agreement between the parties regarding EOUSA documents following Hollander's June 2, 2022, email. The Court's July 31, 2023, Memorandum Opinion outlined steps undertaken to ensure the FBI's compliance with its FOIA obligations, including the FBI's agreement to provide a more detailed *Vaughn* index in September 2021 (Doc. 152 at 2) and the FBI's July 15, 2022, production of 286 pages for *in camera* review (Doc. 162). (*See* Doc. 170 at 3-5.) At no time during this process did Plaintiff raise the issue of EOUSA FOIA documents with the Court. The possibility of consent noted in Holland's June 2, 2022, email was never raised in this Court, although consideration of FOIA obligations remained the subject of court filings through July of 2023 and were addressed at a July 10, 2023, status conference (Doc. 166).[9]

Because EOUSA FOIA documents were not before the Court on remand and were not otherwise the subject of the Court's July 31, 2023, disclosure requirements (Docs. 168-171), the issue of the potential of EOUSA "consent[ing] to roll . . . pages into the existing

---

[9] This issue was raised in Biear's appellate reply brief but was not acknowledged in the Court of Appeals February 28, 2024, Opinion affirming this Court's July 31, 2023, Memorandum Opinion and Order (Docs. 170, 171). 2024 WL 837039.

action" (Doc. 176 at 1) does not present a basis to reopen this case and the Court declines

Biear's request to join a matter related to EOUSA FOIA requests (id.) to the above-

captioned matter.

## 2. Record Review

In his Motion, Biear requests that "all records be reviewed, as this pro se plaintiff

attempted to express: for the 'legality of the FBI's [Government] obtaining the requested

records,' as found in the United States Court of Appeals for the Third Circuit, Case No. 23-

2557 [DE# 18]. FOIA should not be a vehicle to mask wrong doing." (Doc. 176 at 1-2.) The

internal quoted material is found in the Circuit Court's February 28, 2024, Opinion where the

Court states

> Biear also asserts that the District Court "fail[ed] to address the 'legality' of how
> the FBI obtained the documents … which were reviewed by the [D]istrict [C]ourt
> 'incamera[.]'"

(App. No. 23-2557, Doc. 21 (citing Appellant's Br., 1).) Importantly, the Circuit Court went on

to explain that

> Biear did not seek such information in his FOIA request and neglected to raise
> this issue in the District Court. We will not consider it for the first time on appeal.
> See Brown v. Phillip Morris Inc., 250 F.3d 789, 799 (3d Cir. 2001). Even if the
> issue were properly preserved, relief would not be available because agencies
> are not required to answer questions in responding to FOIA requests. See
> DiViaio v. Kelley, 571 F.2d 538, 542-43 (10th Cir. 1978) (holding that "it is clear
> that nothing in the Act requires 'answers to interrogatories' but rather and only
> disclosure of documentary matters which are not exempt").

(App. No. 23-2557, Doc. 21 at 4.)

The Circuit Court's explanation demonstrates that Biear now asks this Court to do what the Circuit Court would not do based on the impropriety of Biear's request. Biear Identifies no other basis for his request that "all records be reviewed" and the Court independently finds no basis to do so. Therefore, Biear's request for review does not present a basis to reopen this case.

### 3. Declaration Investigation

In his reply brief, Plaintiff identifies a statement made in the FBI's response to Plaintiff's pending Motion regarding the mailing of a release of records and requests an investigation into the statement. (Doc. 170 ¶¶ 4, 5.) Biear identifies the following statement:

> On March 1,2024, the FBI mailed a release of reprocessed records ordered to be produced pursuant to this Court's order on July 31, 2023 (Doc. 171) via FedEx to the address provided by Plaintiff: James S. Biear c/o Jennifer Herdman, 1 Ave at Port Imperial, Apt. 1152, West New York, New Jersey 07093-8305.

(Doc. 179 ¶ 4 (citing Doc. 171 at 4).) In its brief, the FBI attributes this statement to Exhibit 2 attached to the brief, the "Declaration of Michael Seidel ¶ 5, Attach A, FedEx receipt." (Doc. 178 at 4.)

After identifying the statement, Biear

> requests an investigation into this declaration . . . . Without going into detail, plaintiff believes the declaration has been mischievously devised by the government to somehow account for the extraordinary delay in the records production. Subsequent to the investigation, a review for sanctions and or disciplinary procedures is requested.

(Doc. 179 ¶ 5.)

The Court finds nothing suspicious about Seidel's statement regarding the shipment history of the reprocessed records (Ex. 2 ¶ 5, Doc. 178-4) or the FBI's recitation of the statement in its brief (Doc. 178 at 4). The Court is cognizant of the passage of time between the July 31, 2023, Orders and the release of documents by the FBI and Criminal Division. However, Plaintiff presents no basis to conclude that wrongdoing occurred related to the release of required documents. Therefore, no investigation of the identified statement is warranted.

## 4. Repeated FOIA Violations

Plaintiff states in his reply brief that

he believes it is overwhelmingly conclusive the defendant(s) have violated FOIA repeatedly, and continue to do so. A violation(s) that also overlaps into how the defendants addressed the criminal USA v. Biear [a criminal case that originated in New York and was transferred to New Jersey [Docket No. 2:20CR00246-001]. An overlap that denied the defendant in USA v. Biear the right to a fair trial.

(Doc. 19 ¶ 8.) Plaintiff's beliefs regarding FOIA violations are not supported by specific allegations and such violations are not supported by the facts of the case. Further, Plaintiff's allegations regarding the fairness of his trial are not the subject of the above-captioned action.[10]

---

[10] Plaintiff's challenges to his criminal conviction and sentence were litigated without success: he filed post-trial motions which were denied (see Doc. 77); his direct appeal was denied (see Docs. 120, 130); and his 28 U.S.C. § 2255 motion was denied (see Docs. 140, 167).

## *5. Fair Trial Motion*

In paragraph 9 of his reply brief, Biear states that "[a] courtesy copy of this letter is being sent to the [sic] Susan D. Wigenton, USDJ, so this letter may also be construed as a motion on how best to address the defendant's 'failure to follow' the right to a fair trial." (Doc. 179 ¶ 9.) As noted above, Document 179 in this case is Document 32 in the District of New Jersey case. *See supra* p.8 n.5. This Court has no jurisdiction over matters related to Biear's trial conducted in the Southern District of New York in 2010 and jurisdiction over the criminal case was transferred ten years later to the District of New Jersey when he was on supervised release. Therefore, Biear's "motion" in paragraph 9 is not properly before this Court.

## IV. CONCLUSION

Although the Circuit Court noted that Plaintiff could seek assistance from this Court to obtain required documents that had not been provided at the time he filed his appeal of this Court's July 31, 2023, Memorandum and Order regarding the FBI's FOIA production (Docs. 170, 171), *Biear*, 2024 WL 837039, at *2 (citing *Butt*, 999 F.3d at 886-87), as discussed above, Plaintiff's pending Motion and reply brief ask for far more.[11] The record is

---

[11] As stated in *Butt*, ancillary jurisdiction "focuses on the 'power of [federal courts] to enforce their judgments," 999 F.3d 887 (quoting *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011)), it "exists 'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees,'" *id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994)). The Court has determined that Defendant satisfied the requirements of the July 31, 2023, Orders--a determination that the Court's decrees have been effectuated.

clear that Plaintiff was provided with all documents required by Court Order as of April 4, 2024. (*See* Doc. 179 at 2.). The Court has also determined that Plaintiff presents no cognizable basis to reopen this case. Therefore, Plaintiff's Motion (Doc. 176) will be denied.

A separate Order will be entered.

Robert D. Mariani
United States District Judge